**Estela P. LUJAN, et al., Appellants,**

v.

**SUN EXPLORATION & PRODUCTION COMPANY and Chaparral Service, Inc., Appellees.**

No. 05–89–01448–CV.

Court of Appeals of Texas, Dallas.

Oct. 2, 1990.

Rehearing Denied Nov. 8, 1990.

Thomas C. Hall, P.C., San Antonio, for appellants.

Matt Gilmore, Dallas, for appellees.

Before WHITHAM, OVARD and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

Estela P. Lujan (Lujan) appeals from an order sustaining a plea to jurisdiction in favor of Chaparral Services, Inc. (Chaparral). In her sole point of error, Lujan contends that the trial court erred in sustaining the plea to jurisdiction in that Chaparral had been shown by the evidence to have systematic and continuous contacts with the State of Texas and to have taken purposeful steps to submit itself to the jurisdiction of Texas courts. We sustain Lujan's point and reverse the judgment of the trial court.

## FACTS

On September 4, 1987, Elias Lujan (the "decedent") was killed in an explosion at an oil storage tank facility located in Eunice, New Mexico. The decedent, a resident of New Mexico, was an employee of Chaparral, a New Mexico corporation. At the time of his death, the decedent was performing work under a contract between Chaparral and Sun Exploration & Production Company ("Sun"), a Delaware corporation with offices in Midland, Texas and Hobbs, New Mexico.

Estela Lujan, the decedent's wife, brought this wrongful death action against Sun and Chaparral in Dallas County, Texas alleging negligence on the part of Sun and gross negligence on the part of Chaparral. Chaparral filed a special appearance to contest the court's jurisdiction. After the hearing, the trial court entered an order sustaining the plea to jurisdiction, holding that Chaparral lacked sufficient minimum contacts with Texas to support jurisdiction.

## PERSONAL JURISDICTION

In her sole point of error, Lujan contends that the trial court erred in sustaining Chaparral's plea to jurisdiction of the Texas court. She contends that Chaparral's business contacts in Texas constitute both sufficient minimum contacts and a purposeful

availment of the privilege of conducting activities, thus invoking the benefits and protections of Texas laws and responsibility to Texas laws. We agree.

In order to exercise jurisdiction over a non-resident, Texas law requires that such jurisdiction be authorized under the Texas long arm statute [1] and consistent with federal and state constitutional guarantees of due process. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 17.069 (Vernon 1986). The Texas long arm statute expressly authorizes the exercise of jurisdiction over those who do business in the state. Section 17.042 of the Code provides that:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contacts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

■ In the instant case, Chaparral entered into a contract in Texas with Sun, a Delaware corporation, to perform oil field service work. During the contract period, Chaparral and Sun made several contacts by mail. Chaparral also sent its employees into Texas to obtain supplies and to perform occasional work under contracts with Texas-based companies. We conclude that Chaparral's contacts with Texas, as a result of its business relationship with Sun, clearly constitute "doing business" under section 17.042. Thus, the requirement for jurisdiction under the Texas long arm statute has been met.

■ We now must determine if the exercise of jurisdiction is consistent with the federal and state constitutional guarantees of due process. The Texas Supreme Court has held that the broad language of section 17.042 allows the long arm statute to reach as far as the federal constitution permits. *See U–Anchor Adv., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978).

Most recently in *Schlobohm v. Schapiro,* 784 S.W.2d 355 (Tex.1990), the Texas Supreme Court modified the formula used to determine whether the exercise of jurisdiction is consistent with due process. To establish jurisdiction within the boundaries of due process, the record must show that:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
>
> (2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic;
>
> (3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, · consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm,* 784 S.W.2d at 358. The *Schlobohm* decision was rendered subsequent to the entry of judgment by the trial court in the instant case.

An essential goal of the due process test is to protect the defendant. *World–Wide Volkswagen Corp., v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Schlobohm,* 784 S.W.2d at 357. Thus, all three prongs of the test must be met to support jurisdiction in the forum state. The Supreme Court, however, rejects mechanical application of any test, including the *Schlobohm* formula. Instead, it regards the *Schlobohm* formula as a useful jurisdictional checklist which helps ensure consideration of all aspects of the

---

**1.** The Texas long arm statute is codified under section 17.042 et seq. of the Texas Civil Practice and Remedies Code (Vernon 1986), hereinafter generally referred to as "the Code".

necessary analysis. *See Schlobohm,* 784 S.W.2d at 358.

■ The first prong under the *Schlobohm* formula concerns the "minimum contacts" analysis. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292, 100 S.Ct. at 564; *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Schlobohm,* 784 S.W.2d at 358. The minimum contacts analysis is somewhat narrow, focusing on the relationship between the defendant, the forum, and the litigation. *See Helicopteros–Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984) *(citing Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). In *Schlobohm,* the Court stated that, to establish minimum contacts, the "foreign corporation must purposefully do some act or consummate some transaction in the forum state." *Schlobohm,* 784 S.W.2d at 357. The act must be purposefully directed into Texas, regardless of the volume. *Schlobohm,* 784 S.W.2d at 359. Those activities, whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there. *See World–Wide Volkswagen,* 444 U.S. at 297, 299, 100 S.Ct. at 567, 568; *see Hanson v. Denckla,* 357 U.S. 235, 250, 252, 78 S.Ct. 1228, 1237, 1239, 2 L.Ed.2d 1283 (1958).

Chaparral's manager, Steven Prather, testified that they operated an oil field service company, "hauling water, cleaning tanks, [and doing] hot [sic] oil well and roustabout connection work" for drillers and producers. Business was obtained by getting on the approval list of oil companies. To do this they would supply a certificate of insurance and a price list for their services to their prospects. Contracts would then be entered into by mailing them to the office designated by the oil company. For example, contracts with Sun Production and Exxon were signed by Chaparral and then mailed to their Texas offices for acceptance.

In 1979, Chaparral entered into a contract with Sun to perform oil field services on an "as needed basis." No service was rendered in Texas by Chaparral for Sun during that period of time. Chaparral maintained both liability and worker's compensation insurance coverage in the State of Texas from the inception of its contract with Sun in 1979 and also maintained a commercial umbrella liability policy with Employers of Texas. In 1986, Chaparral entered a contract to perform oil field services for Oxy USA. Services under this contract have been rendered in Texas by Chaparral during the period of this contract. In addition, Chaparral has carried advertising during the past ten years for its service in *Oil Bermass,* a trade publication distributed throughout the Permian Basin, including both Texas and New Mexico.

When cross-examined as to the frequency of Chaparral's being present in Texas on business, Prather responded:

Q. Okay. How often did you say that employees of Chaparral Service, Inc. go into Texas?

A. It varies, three to four times a month, sometimes.

Q. And has that been basically true ever since the company was formed?

A. No, there have been periods of time that we wouldn't go over there for months, and I am sure back before my time there was even years.

Q. But you would say an average of three to four times a month since you have been with the company?

A. An average, yes.

Q. And so that would be an average of 36 to 48 trips per year?

A. Yes.

Q. And over the ten years you have been with the company, that's 360 to 480 trips in that 10–year period?

A. Yes.

Q. As I understand what you are saying, these are Chaparral Service, Inc. employees?

A. Yes.

Q. And they would be driving vehicles owned by Chaparral Services, Inc.?

A. Yes.

Q. And they would drive them across the New Mexico–Texas border into the State of Texas?

A. Yes.

We conclude that the record contains sufficient evidence to establish minimum contacts between Chaparral and Texas, thus satisfying the first prong of the *Schlobohm* formula.

The second prong of the *Schlobohm* formula focuses on the distinction between specific and general jurisdiction. Prior to the Texas Supreme Court's decision in *Schlobohm*, the second prong of the due process test provided only that "the cause of action must arise from, or be connected with, such act or transaction." In *Schlobohm*, the Court modified the second prong of the test, adding that "jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic." *See Schlobohm*, 784 S.W.2d at 358. In adopting this modification, it was the Court's intention to clarify the federal and state cases which stand for the proposition that jurisdiction is possible whether there are single or numerous contacts between the forum and the defendant. See *Schlobohm*, 784 S.W.2d at 359; *see Helicopteros*, 466 U.S. at 414–15, 104 S.Ct. at 1872–73.

▉ Where the activities of a defendant in a forum are isolated or disjointed, jurisdiction is proper if the cause of action arises from a particular activity. In these cases, jurisdiction is said to be specific. *Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8; *Schlobohm*, 784 S.W.2d at 357. On the other hand, where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between a defendant's particular act and the cause of action. In these cases, jurisdiction is said to be general. *Schlobohm*, 784 S.W.2d at 357; *see Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Schlobohm*, 784 S.W.2d at 357.

In the instant case, Chaparral was not authorized to do business in Texas, had no agent in Texas for service of process, had no employees based in Texas, kept no records in Texas and owned no real or personal property in Texas. Nonetheless, Chaparral entered into a long term contract with Sun in Texas to perform work for it and performed work in west Texas for others and made occasional trips to Texas to purchase supplies. Chaparral carried insurance coverage to protect its employees while working in Texas, which policy was countersigned by the insurer in Dallas. The insurance policies were purchased to provide continuing protection to Chaparral in the event that work was done or it should be sued in Texas. Chaparral also advertised its services in a publication distributed in Texas. This advertisement clearly constitutes the solicitation of business in Texas.

The cause of action in the instant case did not arise from and is not connected with Chaparral's trips into Texas to do work. Rather, it is based on allegations of wrongful death and gross negligence occurring in New Mexico. Therefore, specific jurisdiction has not been established. We, however, conclude that general jurisdiction has been established, grounded on the contract between Sun and Chaparral and its other continuing business operations in Texas. *See Helicopteros*, 466 U.S. at 409, 104 S.Ct. at 1869. In sum, these factors support general jurisdiction as evidence of "prior negotiations and contemplated future consequences." Moreover, the expressed terms of the contract between Sun and Chaparral provide that Texas courts would have jurisdiction over litigation resulting from the execution of the contract. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 480, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528 (1985); *McGee v. International Life Ins. Co.* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). We conclude that these factors represent continuing and systematic contacts with Texas.

▉ The third prong of the *Schlobohm* formula focuses on equitable ques-

tions regarding the exercise of jurisdiction over a foreign corporation. *Schlobohm*, 784 S.W.2d at 359. Exercising jurisdiction must not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 320, 66 S.Ct. 154, 158, 160, 90 L.Ed. 95 (1945). Along with the fairness standard, the forum state's interest must be considered. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The state has a great interest in providing a forum for its citizens where the costs relating to production of evidence and witnesses are considered. *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. The state also has an interest in providing a convenient forum in which disputes involving its citizens can be resolved. *See McGee*, 355 U.S. at 223, 78 S.Ct. at 201.

In the instant case, we conclude that the exercise of jurisdiction over Chaparral would not offend the traditional notions of fair play and substantial justice. There are two defendants in this cause, Sun and Chaparral. The decedent lost his life while performing work under the contract between Sun and Chaparral. While Chaparral is a foreign corporation primarily operating in New Mexico and hiring New Mexico residents, its contract with Sun was broad and substantial. This contract basically provided for work on an "as needed basis." The convenience of allowing Lujan to bring a single suit against Sun and Chaparral jointly in a Texas court is an important factor. We conclude that Chaparral could and indeed did reasonably anticipate being brought before a Texas court to defend itself in litigation stemming from its contract with Sun. We find that exercising jurisdiction over Chaparral in Texas would not offend traditional notions of fair play and substantial justice. *See Schlobohm*, 784 S.W.2d at 358.

We hold that all three prongs of the *Schlobohm* formula have been satisfied. The record supports the exercise of jurisdiction by Texas courts over Chaparral. Accordingly, we sustain Lujan's sole point of error.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

OVARD, J., dissenting with opinion.

OVARD, Justice, dissenting.

I respectfully dissent. In my view, the record fails to establish the continuous and systematic activity required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution as enunciated in *Helicopteros Nacionales de Columbia, S.A., v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The United States Supreme Court made clear that a defendant is not subject to a state's general jurisdiction absent continuous and systematic contacts between the defendant and the forum state. In *Helicopteros*, the Court found that no general jurisdiction existed in Texas, even though Helicopteros created several contacts with Texas. Helicopteros purchased more than $4 million worth of helicopters, parts, and accessories in Texas between 1970 and 1977. During the same years, it sent pilots for training to a Fort Worth plant, where the helicopters were manufactured. Helicopteros also sent management and maintenance personnel to Fort Worth for training and consultation. Helicopteros received payments drawn on a Houston bank. The Supreme Court was not satisfied. It ruled that without contacts more substantial than those present, Texas could not exercise general jurisdiction. *Helicopteros*, 466 U.S. at 411, 104 S.Ct. at 1870. In our case, Chaparral maintained fewer contacts with Texas than had Helicopteros.

*Helicopteros* addressed additional factors which, if present, might support jurisdiction. Those factors include: authorization to do business in Texas, the appointment of an agent for service of process in Texas, solicitation of business in Texas, employees and records based in Texas, real or personal property located in Texas, or signing a contract in Texas. *Id.* We note that most of those factors are equally absent from our case with the following exceptions: Chaparral advertised in

a publication reaching parts of Texas and it bought insurance policies that were countersigned by an insurer in Dallas. As in *Helicopteros*, Chaparral was not authorized to do business in Texas, did not have an agent in Texas for service of process, had no employees based in Texas, kept no records in Texas, and owned no real or personal property in Texas. The only continuous contact would be based on the insurance policies and the contract with Sun to perform work in Texas, under which no work had been performed. The insurance policies were purchased to protect Chaparral. In the event work were ever done in Texas, the policies would be considered continuous. However, the only transaction or act that occurred was the signing of those policies—a single, solitary event. One could consider the coverage to be continuous, but the policies only went into effect when an employee was in Texas, which was sporadic. Therefore, the contacts, if any, were neither continuous nor systematic. In light of the substantial contacts in *Helicopteros* which were held insufficient to warrant jurisdiction, the contacts based on the insurance policy will not subject Chaparral to jurisdiction in Texas.

The contract with Sun could conceivably be considered a sufficient minimum contact. However, a contract with an out-of-state party does not, by itself, establish sufficient minimum contacts with the instate forum to allow the exercise of jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). Several other factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" must be considered. *Id.; see also McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee*, jurisdiction was upheld where a suit "was based on a contract which had substantial connection" with the forum state. *Id.* at 223, 78 S.Ct. at 201. Here, no work was ever done in Texas pursuant to this contract, although the contract left open the possibility that some work could be done in the future. The contract was signed and negotiated in Hobbs, New Mexico, and payment was made to Chaparral in New Mexico. Based on these facts, no continuous and systematic minimum contact occurred because of this contract.

One point that makes this case distinguishable from *Helicopteros* is that Chaparral solicited business in Texas through advertisements placed in a publication that was distributed in New Mexico and Texas. Chaparral testified that the advertisements were directed to customers outside the Permian Basin area, such as northern New Mexico. This solicitation of business, when coupled with the fact that Chaparral never received any business in Texas from this advertisement, is insufficient to support jurisdiction in Texas.

The only other contact with Texas was the work done during short trips to west Texas. As in *Helicopteros*, the trips were not systematic, but rather, they were disjointed and sporadic. In *Helicopteros*, the pilots, management and maintenance personnel made several trips to Fort Worth. The Court held that those trips were a part of the total package which constituted the purchase of the helicopters. *Helicopteros*, 466 U.S. at 418, 104 S.Ct. at 1874. The trips made into Texas by Chaparral were on an "as needed" basis. The record reflects that several months or years would go by between some visits. Since the trips were not planned and a normal routine was not followed for the trips to Texas, the trips cannot be considered systematic contacts with the forum state. Since none of the various meager contacts with Texas were systematic and continuous, general jurisdiction cannot lie over Chaparral in Texas. The majority admits the lack of specific jurisdiction. The case should be dismissed.