**MEMORIAL HOSPITAL SYSTEM, Appellant,**

v.

**FISHER INSURANCE AGENCY, INC., Appellee.**

No. C14–91–00678–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 18, 1992.

Rehearing Denied July 23, 1992.

Thomas Daniel Hollaway, Houston, for appellant.

Christopher S. Goodwin, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION ON MOTION FOR REHEARING

ROBERTSON, Justice.

On motion for rehearing, the original opinion is withdrawn and this opinion is substituted. The motion for rehearing is overruled.

Memorial Hospital System (Memorial) appeals from an order sustaining a plea to jurisdiction and a motion for new trial in favor Fisher Insurance Agency (Fisher). Raising two points of error, Memorial contends that Fisher had sufficient contacts with Texas to justify the exercise of jurisdiction and that Fisher's failure to answer constituted conscious disregard. We reverse.

The principal question presented is whether a Texas court has personal jurisdiction over a defendant whose sole contact with the forum state was to send fraudulent misrepresentations through a single telephone call. When reaching a decision to exercise or decline jurisdiction, the merits of the cause of action are not at issue.

On June 30, 1987, Carlos Mejia, an employee of Robert Kelly Company, presented himself for admission at Memorial Hospital System in Houston, Texas for a work related injury. On that date, Fisher Insurance Agency was contacted by Memorial to verify the existence of workers' compensation insurance coverage for Carlos Mejia. An employee of Fisher advised Memorial that the employees of Robert Kelly Company were covered by workers' compensation insurance. Relying on this information, Memorial admitted Carlos Mejia to the hospital on July 1, 1987 and provided treatment through July 17, 1987.

Subsequently, it was discovered that the policy for Robert Kelly Company would not provide coverage in the state of Texas. Memorial filed suit against Fisher on August 11, 1989, alleging negligent misrepresentation on the part of Fisher. A default judgment was granted against Fisher in the principal amount of $6,013.50 on May 14, 1991. Thereafter, Fisher filed a special appearance objecting to the jurisdiction and a motion for new trial, which were later sustained by the trial court.

## I. TEXAS LONG–ARM STATUTE

In order to exercise jurisdiction over a non-resident, Texas law requires that such jurisdiction be authorized under the Texas long arm statute and consistent with federal and state constitutional guarantees of due process. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 17.041—§ 17.069 (Vernon 1986). The Texas long arm statute expressly authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986). In addition to other acts that may constitute doing business, a nonresident does business in this state, if the nonresident "commits a tort in whole or in part in this state." *Id.*

In the instant case, Fisher negligently represented to Memorial that Carlos Mejia was covered by workers' compensation insurance in Texas. Relying on this information, Memorial admitted Mejia and provided treatment. Thereafter, Memorial discovered that the information given by Fisher was false. In a negligent misrepresentation case, even if the representation occurs outside the state of Texas, a tort is committed in Texas, if reliance thereon occurred in Texas. *See Portland Sav. & Loan Ass'n v. Bernstein,* 716 S.W.2d 532 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986); *Hoppenfeld v. Crook,* 498 S.W.2d 52 (Tex.Civ. App.—Austin 1973, writ ref'd n.r.e.). Since Memorial has alleged a tort committed in part in Texas, the requirement for jurisdiction under the Texas long arm statute has been satisfied.

We now must determine if the exercise of jurisdiction is consistent with the federal and state constitutional guarantees of due process. The Texas Supreme Court has held that the broad language of section

17.042 allows the long arm statute to reach as far as the federal constitution permits. *See U–Anchor Adv., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978).

## II. FEDERAL TEST—DUE PROCESS

The United States Constitution allows jurisdiction over a nonresident defendant if: (1) the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542–43 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). An essential goal of the federal due process test is to protect the nonresident defendant. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Under the minimum contacts analysis, it must be determined whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183. Those activities, whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. This "purposeful availment" requirement ensures that a defendant will not be called into a jurisdiction based solely upon "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

The minimum contacts analysis has been further developed into specific and general jurisdiction. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This analysis focuses on the relationship among the defendant, forum, and litigation. *Id.,* (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). When general jurisdiction is asserted, the defendant's activities in the forum are continuing and systematic; thus there does not have to be a relationship between the defendant's particular act and the cause of action. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872.

Once it has been concluded that the nonresident defendant purposefully established minimum contacts with the forum state, it must be determined whether maintenance of the suit comports with "traditional notions of fair play and substantial justice." *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158. Factors to consider in this analysis, among other things, include: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; and (3) the plaintiff's interest in obtaining convenient and effectual relief. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. Therefore, even if the nonresident defendant has purposely established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–2185.

## III. TEXAS TEST—DUE PROCESS

In an effort to ensure compliance with the federal constitutional standard, the Texas Supreme Court modified the formula used to determine whether the exercise of jurisdiction is consistent with due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355 (Tex.1990). In order for Texas to have jurisdiction over a nonresident, the record must show that:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic;

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm*, 784 S.W.2d at 358. All three prongs of the test must be met to support jurisdiction; however, the test is not to be used mechanically since it is only a guideline for analyzing the federal requirements. *Id.* In the present case, Memorial is asserting specific jurisdiction over Fisher, premised on the latter's contact with Texas through a single telephone conversation.

### A. SPECIFIC JURISDICTION

■ When specific jurisdiction is asserted, the focus is on the relationship between the defendant, the forum, and the litigation. *Lujan v. Sun Exploration & Production Co.*, 798 S.W.2d 828, 831 (Tex. App.—Dallas 1990, writ denied). The defendant must have purposefully established "minimum contacts" with Texas. *Guardian Royal Exch. v. English China*, 815 S.W.2d 223 (Tex.1991). There must be a substantial connection between the nonresident's action or conduct directed toward Texas and the cause of action in Texas. *Id.*

■ In analyzing minimum contacts, it is not the number but rather the quality and nature of the nonresident's contacts with the forum state that is important. *Texas Commerce Bank National Ass'n v. Interpol Lim. Partnership*, 703 S.W.2d 765 (Tex.App.—Corpus Christi 1985, no writ); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir.1974). A nexus is necessary for the assertion of jurisdiction in those instances in which the nonresi-

dent defendant maintained single or few contacts with the forum. *Texas Commerce Bank*, 703 S.W.2d at 771. Although the extent of the defendant's contacts with the forum state may be minimal, the quality and nature of those contacts may be substantial. *Id.* at 774; *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

Because Fisher only had a single contact with Texas, our courts can exercise jurisdiction over it only in suits arising out of that sole contact. During the telephone conversation between the parties, Fisher gave false information to Memorial causing economic injury in Texas. We recognize the fact that just because a tort was committed in Texas does not give our courts jurisdiction over a nonresident. *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ. App.—Austin 1973, writ ref'd n.r.e.). There must be a substantial connection between the contact and the cause of action in the forum state. We find that Fisher's contact with Texas itself was the basis for the cause of action.

■ In determining whether there is a substantial connection between the nonresident defendant and the forum state, "foreseeability" should be considered, especially when the defendant is an insurance company. *Guardian Royal Exch. v. English China*, 815 S.W.2d 223 (Tex.1991). Where a defendant sends false information into a state, knowing it will be relied upon by the resident of the forum state, there is a foreseeable consequence of direct economic injury to the resident at its domicile. *See, e.g., Brown v. Flowers Ind., Inc.*, 688 F.2d 328 (5th Cir.1982); *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir.1972); *David v. Weitzman*, 677 F.Supp. 95 (D.Conn.1987). Therefore, if the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, it must reasonably anticipate being haled into court there to answer for its actions. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

■ In the case at hand, there is a strong nexus between the tort that oc-

curred in Texas and the contact with Texas. Memorial relied to its detriment on the alleged false information provided by Fisher during the telephone conversation. Fisher, acting in the course of its business, should have known that Memorial would rely on the information in deciding to provide treatment to Carlos Mejia. Therefore, Fisher is not denied due process by being subject to suit in Texas, because it allegedly committed a tort with a foreseeable economic injury in Texas. The fact that the information was sent over the phone does not prevent jurisdiction, nor does it make a difference that only one telephone call was involved with respect to this particular action. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). *See also D.J. Investments, Inc. v. Metzeler Motorcycle Tire*, 754 F.2d 542 (5th Cir.1985) (fraudulent inducement occurred over phone); *In–Flight Devices Corp. v. Van Dusen Air, Inc.* 466 F.2d 220 (6th Cir.1972) (telephone call may be indicative of substantial involvement with the forum state); *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (nexus between calls and allegations of misrepresentation).

In *Ramm v. Rowland*, 658 F.Supp. 705 (S.D.Tx.1987), the plaintiff brought suit against a New Jersey defendant alleging alienation of the affection of his wife. The court concluded that the defendant was subject to Texas jurisdiction even though his only contacts with the forum state were several phone calls and a few letters. The court reasoned that the defendant's acts of intentionally contacting the plaintiff's wife by phone to encourage her to leave her husband is the very essence of the tort. The court also mentioned that it is a fact of "modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence in a state in which business is conducted."

Similarly in *Brown v. Flowers Indus. Inc.*, 688 F.2d 328 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983) the court held that a single defamatory telephone call from out of state (analyzed as tortious conduct outside the state causing injury in the state) was sufficient for due process purposes. The court emphasized that "the number of contacts with the forum state is not, by itself, determinative.... What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." The court concluded that since the defendant initiated the telephone call and allegedly committed an intentional tort, of which the injurious effect in Mississippi could have easily been foreseen, then the defendant is not denied due process by being subjected to suit in Mississippi.

When Memorial called Fisher to inquire whether Carlos Mejia was covered by insurance, Fisher knew the call originated from Texas and should have known that the information provided would be relied upon by a Texas resident; therefore who initiated the telephone call is not determinative in finding in personam jurisdiction. *See Dion v. Kiev*, 566 F.Supp. 1387 (E.D.Penn.1983); *Southeast Guar. Trust Co. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001 (N.D.Ill.1973). Furthermore, by sending false information into Texas, causing economic injury in Texas, Fisher purposefully availed itself of the benefits and protections of Texas law. Having determined that Fisher had sufficient minimum contacts with Texas, we must now proceed to the final inquiry, which is whether the assertion of jurisdiction in this case would offend traditional notions of fair play and substantial justice. *Schlobohm*, 784 S.W.2d at 359.

## B. FAIR PLAY and SUBSTANTIAL JUSTICE

■ Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice. *Guardian Royal Exch.*, 815 S.W.2d at 225. The State of Texas has a strong interest in the regulation of insurance and providing a forum

in which disputes involving its citizens can be resolved. *Id.* at 229; *Lujan,* 798 S.W.2d at 833. This interest in litigation becomes even stronger when, as here, the tort was committed in whole or in part in Texas. We hold that the exercise of jurisdiction over Fisher by a Texas court does not offend traditional notions of fair play and substantial justice, and accordingly sustain appellant's first point.

In its second point of error, Memorial contends that the trial court erred in granting Fisher's motion for new trial. We agree.

In order to set aside a default judgment by motion for new trial, the movant must: (1) establish that the failure to answer was not intentional or the result of conscious indifference, (2) set up a meritorious defense, and (3) demonstrate that setting aside the default will not cause a delay or otherwise injure plaintiff. *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939). The movant has the burden to establish prima facie proof of the allegations in its motion by affidavit or other evidence. *Abercia v. First National Bank of San Antonio,* 500 S.W.2d 573 (Tex.Civ.App.—San Antonio 1973, no writ).

A representative of Fisher admits in an affidavit to receiving a demand letter from Memorial and to being served with process on or about August 27, 1989. Fisher excuses itself from filing an answer by stating that it believed its interest in the litigation was being represented by C.N.A./American Casualty because it forwarded the demand letter to the insurance carrier for further handling. Fisher admits that such reliance was error, but not the result of conscious indifference.

When a party relies on an agent or representative to file an answer, the party must establish that the failure to answer was not intentional or the result of conscious indifference of either the party or the agent. *The Estate of Sheldon L. Pollack v. Loraine McMurrey,* 35 Tex.Sup. Ct.J. 732, 1992 WL 91433 (May 9, 1992). Thus, the movant cannot be relieved from a default judgment on the ground that it turned the petition over to its insurer and relied upon the insurer to file an answer, in the absence of showing why the insurer failed to answer. *Harris v. Lebow,* 363 S.W.2d 184 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). Fisher offers no reasonable explanation of why its insurance carrier failed to represent its interest in the present case. Furthermore, conscious indifference can be defined as the failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances. *Dreisbach v. Reed,* 780 S.W.2d 901, 903 (Tex.App.—El Paso 1989, no writ). It is reasonable to assume that when a prudent person is served with a petition concerning a lawsuit and is relying on his agent to represent his interest, he is going to make sure that his agent is using due diligence in handling the lawsuit. Fisher has not shown that its failure to file an answer was not intentional or the result of conscious indifference.

It is unnecessary to consider whether Fisher met the other requisites set forth in *Craddock* because it failed to establish the first requirement of the test. Appellant's second point of error is sustained.

We reverse the judgment of the trial court and render judgment in favor of appellant as previously granted in the original decree of February 1, 1990.