Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-08-00176-CV

**JAKE SWEENEY AUTOMOTIVE LEASING, INC.,**
Appellant

v.

Ralph **TIPTON** and Mary Tipton,
Appellees

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-02075
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Karen Angelini, Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  July 16, 2008

AFFIRMED

Ralph and Mary Tipton sued Jake Sweeney Automotive Leasing, Inc., an Ohio corporation, for an injunction and damages. Plaintiffs' original petition alleged that Sweeney misappropriated personal property belonging to them, a 1996 Hummer limousine, by wrongfully taking possession of the vehicle from an automotive repair shop in San Antonio, Bexar County, Texas. Sweeney appeals the trial court's denial of its special appearance. Because the issues in this appeal involve

the application of well-settled principles of law, we affirm the trial court's judgment in this memorandum opinion.

## DISCUSSION

In two issues, Sweeney maintains that the trial court erred by overruling its special appearance because it lacks the necessary contacts with Texas to support either specific or general jurisdiction. Whether a Texas court may assert personal jurisdiction over a nonresident defendant is a question of law subject to *de novo* review. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the record to determine if the nonresident defendant satisfied its burden to negate all possible grounds of personal jurisdiction. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007). Where, as here, the trial court does not file findings of fact, we view the trial court's judgment as impliedly finding all the facts necessary to support its judgment. *Marchand,* 83 S.W.3d at 795.

Texas courts may exercise "*in personam* jurisdiction over a nonresident if (1) the Texas long-arm statue authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Drugg*, 221 S.W.3d at 574. Under the Texas long-arm statute, a nonresident defendant is amenable to personal jurisdiction in this state if the nonresident "does business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.043-.044 (Vernon 1997); *Marchand*, 83 S.W.3d at 795. A nonresident does business in Texas if, for example, it "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997); *Marchand*, 83 S.W.3d at 795 (noting that the activities listed in section 17.042 are not the exclusive means of doing business in Texas). Additionally, in order to satisfy due process guarantees, the nonresident defendant must have purposefully availed itself of the privilege of

conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex. 2005).

The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *Drugg*, 221 S.W.3d at 574. Here, the plaintiffs' original petition for injunction and damages claimed that the Tiptons were the owners of the Hummer limousine at issue, that Sweeney "misappropriated" the vehicle when it was "unlawfully released" to Sweeney by mechanic Sam Ramos, owner of Louis Automotive in San Antonio, Bexar County, Texas, and that Sweeney has threatened irreparable harm to the plaintiffs' property because it was "trying to lease or sell a stolen vehicle that is legally owned by plaintiffs." When liberally construed, plaintiffs' petition contains sufficient jurisdictional allegations to invoke the long-arm statute, specifically, that Sweeney committed a tort in Texas when it wrongfully took possession of the Hummer limousine belonging to the Tiptons without their consent from a Texas business. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2); *see also Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004) (pleadings are liberally construed in favor of pleader in determining whether he has pled sufficient facts to demonstrate trial court's jurisdiction). Because the Tiptons alleged sufficient facts to demonstrate jurisdiction under the long-arm statute, the burden shifted to Sweeney to negate all bases of personal jurisdiction.

At the hearing on the special appearance and on appeal, Sweeney maintains the trial court lacked both specific and general personal jurisdiction because Sweeney had no purposeful contacts with the State of Texas; instead, any contacts with Texas or the Hummer limousine were initiated by others. We will begin by focusing our analysis on specific jurisdiction. When specific jurisdiction is alleged, the minimum contact analysis focuses on the "relationship among the

defendant, the forum, and the litigation." *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, they must be purposefully directed at the forum state and have a substantial connection with the operative facts of the litigation. *Drugg*, 221 S.W.3d at 577-79, 585.

Both parties generally agree on the facts developed during the evidentiary hearing on the special appearance. Sweeney is an Ohio corporation with offices in Cincinnati, Ohio; its business is to lease and sell motor vehicles; and it has no business office, employees, or registered agent for service in Texas. Sweeney engages in national advertising including yearly trade shows, passive internet advertising, and ads in trade journals throughout the United States, though none are specifically directed at the State of Texas. Sweeney has no regular or customary business with Texas residents, although Sweeney did have two current lease agreements with persons located in Texas. All of Sweeney's sales and lease contracts provide that the contract is governed by Ohio law.

The parties further agree that the vehicle at issue is a 1996 Hummer limousine. According to records from the Texas Department of Transportation, Vehicle Title and Registration Division, the Hummer was first registered in Texas to Eduardo Pena on August 8, 2000. It is also undisputed that at some point Pena took the vehicle to a repair shop in San Antonio, Texas. Repairs were completed but not paid. The repair shop, Louis Transmission, filed a mechanic's lien and the vehicle was sold by foreclosure to Angelica Solis on October 3, 2007. Although the parties thereafter dispute rightful ownership of the vehicle, the parties agree that after the foreclosure sale, and while the Hummer was still in the possession of the repair shop, an agent of Sweeney picked up the Hummer, paid Louis Transmission the amount of the mechanic's lien, and moved the vehicle to Ohio.

Timothy McLaughlin, an employee of Sweeney, testified that Sweeney became aware of the Hummer when Pena initiated a call to Sweeney in September 2007, and offered to transfer title to the Hummer in exchange for a $60,000 credit against Pena's past-due balance owed to Sweeney as a result of a previous lease agreement. Sweeney and Pena reached an oral agreement, and Pena delivered the original title by overnight delivery, assigning title to Jake Sweeney Automotive Leasing effective October 23, 2007. In its briefing before this court, Sweeney maintains that, thereafter, a series of transactions "caused Sweeney to conduct business in Texas that it would not have engaged in but for 'people in Texas who instigated it.'" Based on this evidence, Sweeney argues its contacts with Texas and the Hummer were not purposeful, but instead were initiated by the acts of others, particularly Pena, and therefore, were "random, isolated, and fortuitous." We disagree.

Sweeney does not dispute that after it reached an agreement to purchase the vehicle from Pena, Sweeney voluntarily entered Texas, traveled to San Antonio, paid Louis Transmission for the mechanic's lien, took possession of the Hummer, and then transported the vehicle from Texas. Based on this uncontroverted evidence, the trial court could have reasonably concluded that Sweeney made a deliberate and purposeful decision to come to Texas to take delivery and possession of a vehicle it believed it had purchased. *See IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007) (noting that there are three aspects to purposeful availment: the nonresident's forum-state contacts; purposeful contacts; and the nonresident's procurement of a benefit, advantage, or profit in the forum state). Furthermore, since the vehicle at issue was registered in Texas, Sweeney could reasonably foresee the need to invoke the benefits and protections of Texas law because, in order to finalize any sale of the Hummer vehicle, its Texas registration would have to be assigned and its Texas title transferred to Sweeney. *See* TEX. TRANSP. CODE ANN. § 501.071(a) (Vernon 2007) ("a motor vehicle

may not be the subject of a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title at the time of the sale").

Specific personal jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Drugg*, 221 S.W.3d at 575-76 (for specific jurisdiction, minimum contacts analysis focuses on the defendant, the forum, and the litigation). Here, Sweeney's entry into Texas to take physical and legal possession of a vehicle registered and located within Texas is the very reason Sweeney is being sued, *i.e.*, the alleged wrongful removal of the Hummer limousine from an automotive repair shop in San Antonio, Texas. Contrary to Sweeney's characterization that these contacts with Texas were wholly "involuntary," the evidence supports the fact that Sweeney's contacts with Texas were deliberate rather than fortuitous and were intended to obtain a benefit, advantage, or profit. *Cf. Small v. Small,* 216 S.W.3d 872, 878 (Tex. App.—Beaumont 2007, pet. denied) (by coming to Texas to get diamond ring owned by Texas residents, nonresident recipient of diamond ring had sufficient contacts with state to justify exercise of specific jurisdiction for claimed conversion and theft); *Murray v. Murray*, 515 S.W.2d 387, 390-92 (Tex. Civ. App.—Waco 1974, no writ) (by coming to Texas, moving airplane and selling it, nonresident had sufficient contacts with state to justify exercise of specific jurisdiction for claimed conversion). Accordingly, we hold there is legally and factually sufficient evidence to support the trial court's exercise of specific personal jurisdiction over Sweeney. *See Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex. App.—Houston [14th Dist.] 1992, no writ) (even a single contact with Texas, depending on the quality and nature of that contact, may be sufficient to establish specific jurisdiction when the cause of action arises from that contact). Because our

resolution of specific jurisdiction is dispositive of this appeal, we need not address Sweeney's other issues.

## CONCLUSION

Because Sweeney did not successfully negate specific personal jurisdiction, the trial court properly overruled Sweeney's special appearance. We affirm the trial court's judgment.


Phylis J. Speedlin, Justice