NO. 07-10-0303-CR

NO. 07-10-0304-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

AUGUST 30, 2010

 

______________________________

 

 

DAYMON LAMAR JOHNS, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

 

NOS. 56,483-E & 58,725-E; HONORABLE DOUGLAS R.
WOODBURN, JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

ABATEMENT AND REMAND

            In exchange for a guilty plea, in
2007, Appellant, Daymon Lamar Johns, was convicted in
cause number 56,483-E of evading arrest with a vehicle and sentenced to two
years confinement and a $1,000 fine.[1]  Appellant's sentence was suspended in favor
of five years community supervision.  In
2009, in exchange for a guilty plea, in cause number 58,725-E, Appellant was
granted deferred adjudication community supervision for five years for
possession of a controlled substance in a drug-free zone.[2]  On March 19, 2010, the State filed an Amended
Motion to Revoke Order for Community Supervision in cause number 56,483-E and
an Amended Motion to Proceed with Adjudication of Guilt on Original Charge in
cause number 58,725-E alleging violations of the terms and conditions of
community supervision.  Appellant entered
pleas of true in both causes and the trial court revoked community supervision
and sentenced Appellant to two years in a state jail facility plus a $1,000
fine in cause number 56,483-E.  The trial
court also adjudicated Appellant guilty of possession of a controlled substance
in a drug-free zone and sentenced him to nine years confinement and a $1,000
fine in cause number 58,725-E.  The trial
court ordered the sentence in cause number 56,483-E to run consecutively to the
sentence in cause number 58,725-E. 

When the clerks' records were filed on August 17, 2010, it
came to the Court=s attention that the record in cause
number 58,725-E did not contain a Trial Court=s Certification of Defendant=s Right of Appeal as required by Rule 25.2(a)(2) and (d) of the Texas Rules of Appellate Procedure and
that the record in cause number 56,483-E contained two separate certifications,
neither of which is signed by Appellant as required by Rule 25.2(d).[3]

Consequently, we abate this appeal and remand this cause to
the trial court for further proceedings. 
Upon remand, the trial court shall utilize whatever means necessary to
secure a proper Trial Court=s Certification of Defendant=s Right of Appeal in compliance with Rule 25.2(d) in each
cause referenced herein.  Once properly
completed and executed, the certifications shall be included in supplemental
clerks' records.  See Tex. R. App.
P. 34.5(c)(2). 
The trial court shall cause the supplemental clerks' records to be filed
with the Clerk of this Court by September 29, 2010.  This order constitutes notice to all parties,
pursuant to Rule 37.1 of the Texas Rules of Appellate Procedure, of the
defective certifications.  If
supplemental clerks' records containing proper certifications are not filed in
accordance with this order, these causes will be referred to the Court for
dismissal.  See Tex. R. App. P.
25.2(d). 

It is so ordered.

Per
Curiam

Do not publish.

 

 

 

                                                                                    

 











[1]Tex.
Penal Code Ann. § 38.04(b)(1)(B) (Vernon Supp. 2009).





[2]Tex. Health & Safety Code Ann. § 481.134 (Vernon 2010).

 





[3]As of September 1, 2007, a defendant must sign and
receive a copy of the certification. 








isdiction to answer for
his own tortious conduct simply because his actions were undertaken on behalf
of an organization, we do not find SITQ controlling here. It involves
factors not present in this case. Significantly, in SITQ, the actions of
a Texas agent were imputed to the appellants. Too, that case involves
allegations of misrepresentations, a factor not present here. It therefore
shares a foundation with cases such as Memorial Hosp. Sys. v. Fisher Ins.
Agency, Inc. 835 S.W.2d 645 (Tex.App.–Houston [14th Dist.] 1992,
no writ), cited here by Miller, and Shapolsky v. Brewton, 56 S.W.3d 120
(Tex.App.–Houston [14th Dist.] 2001, no pet.), which also involved
misrepresentations made by out-of-state defendants to Texas plaintiffs who
relied on them in Texas.[9]  Miller has attempted to bring this case
within that category by pointing out that WTB continued to pay the rent under
the lease for some time after the closing of the sale of the radio station,
perhaps therefore misleading Miller to believe that it would continue to pay
the lease. There is no evidence, though, that WTB’s rent payments after the
closing were accompanied by any representation and the payments themselves
cannot be seen as such.  








The evidence shows that Morgan, acting in
Mississippi, caused WTB to deplete its funds by paying some of its creditors,
including himself, while failing to pay Miller. There is factually sufficient
evidence from which the trial court could have concluded that Miller was the
only creditor not paid. Miller does not contend that Morgan thereby committed a
tortious act in Texas, but cites the proposition that a tortfeasor who knows
that the brunt of the injury will be felt by a particular resident in the forum
state must reasonably anticipate being haled into court there to answer for his
actions. See Cartlidge v. Hernandez, 9 S.W.3d 341, 348 (Tex.App.–Houston
[14th Dist.] 1999, no pet.), citing Memorial Hospital. This
court previously has declined to adopt a test basing personal jurisdiction on
the mere occurrence of injury in Texas. See Laykin v. McFall, 830 S.W.
2d at 271. We cannot say that Morgan’s failure to cause WTB to honor its lease
with Miller, without more, is an activity sufficiently directed to Texas to
subject him personally to jurisdiction here. See Burger King, 471 U.S.
at 474 (foreseeability of causing injury in another state not sufficient alone
to cause defendant to anticipate being subjected to suit in that state).

Finding that the record does not support a
conclusion that Morgan’s activities established the minimum contacts with Texas
such as to subject him to personal jurisdiction, we need not address whether
the exercise of personal jurisdiction over him would comport with “fair play
and substantial justice.”  We sustain
Morgan Dowdy’s issue, reverse the order of the trial court denying his special
appearance, and remand the case with instructions to dismiss Morgan Dowdy. 

James
T. Campbell

        Justice











[1]The
corporation’s actual name was West Texas Broadcasting Company, Inc. All its
shares were owned by members of Charles W. Dowdy’s immediate family. The
corporation submitted an application to the Texas Secretary of State for a
certificate of authority to transact business in Texas. It appears that it did
not do so, though, until the day before the closing of the sale of its station
in Tahoka. 





[2]Her husband,
Lionel Miller, died before commencement of this litigation.





[3]Morgan testified
on deposition that he had traveled to Texas to inspect the tower after its
construction, and acknowledged one or two other trips to Texas on corporation
business, but denied any other contact with our state.





[4]Morgan questions
the sufficiency of Miller’s allegations concerning Morgan’s personal
amenability to suit in Texas to meet this “initial burden,” citing Frank A.
Smith Sales, Inc. v. Atlantic Aero, Inc., 31 S.W.3d 742 (Tex.App.–Corpus
Christi 2000, no pet.). Miller’s original petition, which, according to the
record before us, remains her live pleading, alleges only a suit to enforce the
lease. Morgan testified on deposition that the lease was a valid obligation of
WTB, and that WTB’s lack of funds was the only reason it  had not made further payments under the lease.
He further testified that the funds WTB received from sale of the radio station
were used to pay creditors, which included Morgan himself and other entities
controlled by Morgan and other family members. Miller’s allegations that such
payments were improper and breached a duty Morgan owed Miller, and her
allegation of his execution of a non-compete agreement, were contained
initially in her response to Morgan’s special appearance and later in briefs in
the trial court and this court. For purposes of this opinion, we assume,
without deciding, that the allegations in Miller’s original petition that
Morgan “conducted business” in Texas, either alone or coupled with Miller’s
later assertions of Morgan’s execution of the non-compete agreement and
wrongdoing in handling the proceeds of WTB’s sale of the radio station, meet
her “initial burden.” 





[5]None of Miller’s
record references identify an executed copy of the agreement. Morgan testified
on deposition that he did not remember signing such an agreement. The record
contains an unsigned copy of a document entitled “Non-Compete Agreement”
between the station purchaser and Morgan. The record also contains an opinion
of counsel issued in connection with the closing of the sale that states a
non-compete agreement was signed. This opinion assumes that Morgan signed a
non-compete agreement like that in the record. There is no contention, though,
that Morgan signed the agreement in Texas. Morgan testified on deposition that
the sale of the station was closed “by mail,” and none of the documents signed
by Morgan in connection with the sale appear to have been signed in Texas. 

 





[6]Miller argues
that Morgan consented in the non-compete agreement to its enforcement in Texas.
Without expressing any opinion on the question whether personal jurisdiction
would lie in Texas for a suit against Morgan to enforce the non-compete
agreement, we note that we do not find an agreed forum-selection provision in
the agreement; it does contain a choice-of-law provision adopting the internal
law of Texas.  





[7] Tex. Bus. Corp. Act Ann. art. 8.02 (Vernon 2003).





[8]Article 6.04 of
the Business Corporation Act establishes procedures a corporation must follow
“before filing articles of dissolution.” The Siegel opinion applied the
provisions of article 6.04 to the dissolution of a corporation. 663 S.W.2d at
826. Article 6.04 thus applies to WTB only by analogy. The undisputed evidence
is that WTB was not dissolved, only that it has no assets and its certificate
of authority to do business in Texas lapsed. 
Neither of these conditions invokes the provisions of article 6.04. Even
assuming, arguendo,  that
Morgan’s conduct amounted to a breach of duty imposed by Texas law, that fact
alone cannot establish the minimum contacts necessary to sustain personal
jurisdiction.





[9]Note the
discussion in Memorial Hospital that the tort there alleged, that
of negligent misrepresentation, is held to be committed in part where reliance
on the misrepresentation occurs. 835 S.W.2d at 648.