Chuck BALL, Appellant,

v.

Ron BIGHAM, d/b/a R & J Engine Service & Gen Sets, Appellee.

No. 07–98–0096–CV.

Court of Appeals of Texas, Amarillo.

Feb. 23, 1999.

Gassaway Gurley & Mitchell (Leon
Mitchell), Borger, for appellant.

Mullin Hoard & Brown LLP (John M. Brown and Robert R. Bell), Amarillo, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

DON H. REAVIS, Justice.

Chuck Ball (Ball), appellant, seeks reversal of a trial court order sustaining the special appearance of Ron Bigham, d/b/a R & J Engine Service & Gen Sets (Bigham), appellee, and dismissing Ball's action against Bigham for breach of contract and alternatively for damages under the Deceptive Trade Practices Act. Ball presents eight points of error contending the trial court erred in making certain findings of fact and conclusions of law. Being of the opinion that specific jurisdiction as distinguished from general jurisdiction of a nonresident is shown,[1] we reverse the judgment and remand the cause to the trial court for further proceedings.

On January 31, 1995, Ball, a resident of Hansford County, Texas, went to Hugoton, Kansas, to meet Bigham, a resident of Stevens County, Kansas, to inquire about purchasing an engine to be used in his irrigation farming operations in Hansford County.[2] In addition to his farming operations, Bigham also repaired and rebuilt engines used in the oil field industry and irrigation farming, and bought and sold rebuilt engines. Bigham did not maintain a business location, agent or representative, nor advertise in Texas, and did not own any property in Texas. The evidence was conflicting as to the source of Ball's knowledge that Bigham was a potential supplier, but that determination is not significant for purposes of our analysis. At that time, Bigham had a 353 Caterpillar engine available for sale at a price of $17,-500. Ball indicated he wanted to purchase the engine, but wanted it delivered to his farm in Texas. Ball and Bigham agreed to the sale of the engine for a total price of $18,700, which included Bigham's painting and servicing of the engine, and Bigham's assistance in its delivery and installation on Ball's farm in Texas. Before he left Kansas, Ball gave Bigham a check for the agreed total price of $18,700 and Bigham gave Ball a bill of sale for the engine.[3] Bigham delivered the engine to Ball's farm in late March or early April 1995, and set the engine off and assisted Ball and others in making it operational. A few weeks later, after Ball noticed some problems with a gasket, he called Bigham. After that call, Bigham traveled from Kansas to the farm in Texas and repaired the engine.

After operating the irrigation engine for some time, Ball detected what he considered to be problems or defects with the engine and gave Bigham written notice of his claims. When Ball's request for relief was not forthcoming, he filed the underlying action. By his live pleadings, he asserted that although Bigham was a resident of Kansas, the court had specific and/or general jurisdiction over the nonresident. Bigham responded by special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure, which was first heard on March 25, 1997. While the special appearance was under advisement, the trial court granted Bigham's request to re-open the hearing, which was followed by a second hearing held on July 29, 1997. On December 29, 1997, the trial court signed its order sustaining the special appearance and dismissing Ball's action with prejudice to refiling in Texas and that Ball take nothing. Following Ball's request for findings of fact and conclusions of law, the

---

1. See discussion in *Guardian Royal Exch. v. English China*, 815 S.W.2d 223, 230 (Tex. 1991). Our analysis of Ball's claim of general jurisdiction is pretermitted. Tex.R.App. P. 47.1.

2. We note that Hansford County is situated in the northern Texas Panhandle and that Ste-

vens County is located in the extreme southwest part of Kansas.

3. The bill of sale does not reflect the sales price or other terms of the agreement, but simply notes the date, parties and addresses, and serial number of the engine.

trial court made and signed the following findings of fact and conclusions of law on January 23, 1998:

## FINDINGS OF FACT

1. Plaintiff, Ball is an individual residing at 1018 South Evans, Spearman, Hansford County, Texas.

2. Defendant, **RON BIGHAM, d/b/a R & J ENGINE SERVICE & GEN SETS** ("Bigham") is an individual residing in Hugoton, Stevens County, Kansas.

3. On March 25, 1997 and July 29, 1997, respectively, this Court conducted hearings on Bigham's special Appearance to the jurisdiction.

4. Bigham is not a resident of Texas.

5. Bigham is an individual who does business as R & J Engine Service & Gen Sets in Hugoton, Stevens County, Kansas.

6. On January 31, 1995, Bigham soled a 353 Caterpillar engine to Ball.

7. Ball traveled to Kansas to Bigham's place of business in Hugóton, Kansas on January 31, 1995, wherein Ball viewed the engine. On that date, Ball purchased the engine by delivery of a check to Bigham, and received a Bill of Sale in return. After purchase of the engine, Ball asked Bigham to paint the engine and deliver the engine to Hansford County, Texas.

8. Bigham painted the engine in Kansas and delivered the engine to Hansford County, Texas in the Spring of 1995.

9. At the request of Ball, in the Summer of 1995, Bigham returned to Hansford County, Texas, to repair a gasket on the irrigation engine.

10. Bigham had never lived in the State of Texas and did not: maintain any bank accounts; own and (sic) real or personal property; pay any kind of taxes; did not advertise; or maintain any offices, employees, or sales representatives in Texas.

11. Bigham had two other customers from the State of Texas. Each of these customers contacted Bigham in Kansas. An agreement for the purchase of an engine for each customer was negotiated and consummated in Kansas.

12. Bigham was not in Jerry Holton's place of business, and did not leave a business card in that business, in the Summer of 1994.

13. Bigham's actions toward the State of Texas were isolated and disjointed.

14. The contract, which serves as the basis of this lawsuit, was not negotiated nor consummated in the State of Texas.

15. A lawsuit was filed by Ball in the 84th District Court of Hansford County, Texas. The lawsuit is entitled *Chuck Ball vs. Ron Bigham, d/b/a R & J Engine Service & Gen Sets.*

16. Any finding of fact that is a conclusion of law is hereby deemed to be a conclusion of law and any conclusion of law that is deemed to be a finding of fact is hereby deemed to be a finding of fact.

## CONCLUSIONS OF LAW

1. Bigham did not purposefully do any act or consummate any action toward the State of Texas.

2. The alleged cause of action neither arose from, nor was connected with, any acts of Bigham in the State of Texas. Bigham's contacts with Texas were not continuing and systematic.

3. The assumption of jurisdiction by the State of Texas will offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of Bigham's activities in the State of Texas, the relative convenience of the parties, the benefits and protection of the laws of the State of Texas afforded the respective parties, and the basic equities of the situation.

4. Bigham had no minimum contacts with the State of Texas in regard to the sale of the engine to Ball.

5. Bigham does not and has not conducted business in the State of Texas.

6. Although Bigham had some contacts with Ball in Texas, the contacts alone are not sufficient contacts to confer jurisdiction.

7. The nature and extent of Bigham's contacts with the State of Texas are de-minimis at best.

8. Bigham did not meet the minimum contacts required with the State of Texas in order for jurisdiction to be conferred.

9. Bigham did not purposefully avail himself of the benefits of the State of Texas and had no reasonable expectation of being called into Court in the State of Texas.

10. Forcing Bigham to defend himself in the State of Texas would deprive Bigham of due process of law.

11. Any conclusion of law that is deemed to be a finding of fact is hereby deemed to be a finding of fact and any finding of fact that is a conclusion of law is hereby deemed to be a conclusion of law.

## Standard of Review for Special Appearance

 The standard of review for a plea to the jurisdiction is sufficiency of the evidence. *De Prins v. Van Damme*, 953 S.W.2d 7, 13 (Tex.App.—Tyler 1997, pet. denied), *cert. denied*, —— U.S. ——, 118 S.Ct. 2060, 141 L.Ed.2d 138 (1998); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). In our review, we must view all of the evidence before the trial court contained in the reporter's record and affidavits, stipulations and other matters as allowed under Rule 120a, on the jurisdiction issue raised in a special appearance even where, as here, the trial court made findings of fact and conclusions of law. *Linton v. Airbus Industrie*, 934 S.W.2d 754, 757 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Moreover, a trial court need not make additional findings of fact which are shown by undisputed evidence in the record and which would relate merely to evidentiary matters. *Conner v. Conti-Carriers and Terminals*, 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ). When the trial court makes conclusions of law, our review of such conclusions is *de novo, Linton*, 934 S.W.2d at 757, and we are required to review the uncontroverted evidence in the record that is not reflected in the court's findings of fact to determine whether the conclusions of law by the trial court are supported by the evidence as a whole. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex.1985).

By his first two points of error, Ball contends the trial court erred in finding that (1) Bigham did not agree to perform a portion of the contract in Texas, and (2) the contract was not negotiated or consummated in Texas. Because we consider these points to raise only factual insufficiency questions, we must set out the appropriate standard of review which applies to factual sufficiency challenges in support of the trial court's findings of fact and conclusions of law, as applies to an order sustaining a special appearance.

 Except as stated above, the standard of review for cases involving a special appearance and review of factual sufficiency require us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). As a reviewing court, we cannot substitute our conclusions for those of the trial court. *Brown v. The State Bar of Texas*, 960 S.W.2d 671, 674 (Tex.App.—El Paso 1997, no writ). If there is sufficient competent evidence of probative force to support the challenged findings, they must be sustained. As an appellate court, we do not interfere with the trial court's resolution of conflicts in the evidence, or pass on the

weight or credibility of the witnesses' testimony. Further, where there is conflicting evidence, the findings of the trial court are generally regarded as conclusive. *Id.*

■ Ball's second point claiming that the trial court erroneously found the contract "was not negotiated or *consummated* in the State of Texas," is apparently directed at fact finding 14. In this regard, our review of the record shows without any dispute that Ball went to Kansas, and while there, Bigham agreed to sell, paint, service and deliver the engine and Ball agreed to buy the engine. Also, at that time, Ball gave Bigham his check for the full price, to-wit: $18,700. The record shows that the "deal" or agreement was made on January 31, 1995, while Ball was in Kansas. "Consummated" is not synonymous with "performance" as applied to contracts of sale. *See* Tex. Bus. and Com. Code Ann. §§ 2.501–2.515 (Vernon 1994). Ball's second point is overruled.

■ In his first point, Ball contends the trial court erred in finding that Bigham did not agree to perform a portion of the contract in Texas, but Ball does not identify the specific finding which is challenged. By fact finding 8, the trial court found that Bigham delivered the engine to Hansford County, Texas, and by fact finding 9, the trial court found that Bigham returned to Texas to repair a gasket on the engine. Considering these two findings, it appears that Ball's contention is directed at conclusion of law 1, which states that Bigham did not purposefully do any act or consummate any action toward the State of Texas, which we consider to be a finding of fact and not a conclusion of law. Because the trial court found that Bigham made two trips to Texas to deliver, and later to repair, the engine, the trial court found that such acts were not "purposeful" contacts with Texas.

At the hearing on March 25, 1997, Bigham testified that the agreement required that he deliver the engine to Texas. Further, he stated that after he delivered the engine, " I'd stay there and help 'em hook it up ... I would help them with the plumbing and hooking the water lines up." Then, at the July 27, 1997 hearing, Bigham testified as follows:

Q. But when you made the deal with Mr. Ball, you understood that you were to deliver the engine to Hansford County?

A. Yes, sir.

Q. And you understood at the time that you took the check that you were

supposed to get it set up, get it started, and get it running as part of the——

A. I was to help them.

Q. All right.

A. It wasn't my job to get the piping and the plumbing, but I was to help them get it started up and running.

Q. And you understand that that was going to happen in Hansford County,

Texas?

A. Yes.

The record establishes without dispute that Bigham expressly agreed to deliver and assist in the installation of the engine in Texas. Moreover, Bigham, as the seller, had the obligation to "transfer and deliver" the engine under section 2.301 of the Texas Business and Commerce Code Annotated (Vernon 1994).[4] Also, physical delivery of the engine was essential to the passage of title, notwithstanding the fact that Bigham gave Ball a bill of sale on January 31, 1995. Tex. Bus. & Com.Code Ann. § 2.401(b) (Vernon 1994). Because Bigham knew he was obligated to deliver the engine and assist in its installation in Texas at the time he accepted Ball's payment, he was bound to partially perform the contract in Texas and his contacts with Texas in this regard were purposeful. Accordingly, Ball's first point is sustained.

---

**4.** Kansas has also adopted the Uniform Commercial Code.

By his remaining points, without identifying specific conclusions, Ball contends the trial court erred in its conclusions of law that: (3) Bigham had no minimum contacts with Texas, (4) Bigham does not and has not conducted business in Texas, (5) Bigham's contacts with Texas were not sufficient to confer jurisdiction, (6) Bigham did not purposefully do any act or consummate any action toward Texas, (7) Bigham did not meet the minimum contacts required for jurisdiction, and (8) assertion of jurisdiction over Bigham would deny Bigham due process. Because our review of conclusions of law is *de novo*, we will consider the remaining points together to the extent they are directed to "specific" jurisdiction (the cause of action must arise out of or relate to the nonresident's contact(s) with Texas). *Guardian Royal Exch. v. English China*, 815 S.W.2d 223, 230 (Tex. 1991). We need not consider the "general" jurisdiction grounds.

As relevant here, section 17.042(1) of the Texas Civil Practice and Remedies Code Annotated (Vernon 1997) provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or *otherwise* with a Texas resident and *either party* is to perform the contract in whole or *in part* in this state.

(Emphasis added).[5]

■ Where, as here, the nonresident had only one, or limited contact with Texas, in determining the constitutional reach of jurisdiction of a Texas court over a nonresident, we apply a three-prong test. *Siskind v. Villa Foundation For Educ., Inc.*, 642 S.W.2d 434, 436 (Tex.1982). First, the nonresident must *purposefully* do some act or consummate some transaction in Texas. Second, the cause of action must arise from, or be connected with such

act or transaction, and third, the assumption of jurisdiction by Texas must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in Texas, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Id.* at 436; O'Brien v. Lanpar Company, 399 S.W.2d 340, 342 (Tex. 1966).

■ In applying section 17.042(1) of the Texas Civil Practice and Remedies Code, to the uncontroverted evidence, we conclude that Bigham, a nonresident, *otherwise* (not by mail), contracted with Ball, *a Texas resident*, and that Bigham, being an *either party* was to *in part* perform the contract in Texas, (*i.e.* deliver the engine to Texas and assist in its installation). Regarding the first prong of the test, in *Siskind*, 642 S.W.2d at 436, the Court held that the nonresident's decision to advertise in Texas was "a sufficiently purposeful act" that was done in Texas. Similarly, Bigham's decision to accept Ball's payment for the engine,[6] which included payment for his delivery of the engine and assistance in installing it in Texas, was purposeful and his delivery of the engine to Texas and assistance in installing it was sufficient purposeful action done in Texas to satisfy the first prong. Bigham, however, contends his contacts were simply random, fortuitous or attenuated. However, Bigham's trip to Texas and conduct in Texas was in fulfillment of his obligation under the agreement and was thus, not fortuitous, an event happening by chance or accident or unexpectedly. Black's Law Dictionary, 654 (6th ed.1990).

Regarding the second prong that the cause of action must arise from or be connected with the nonresident's act, Ball's pleadings alleged the contract of sale, and

---

**5.** The Kansas "long arm" statute is similar to the Texas statute. Kan. Stat. Ann. § 60–308(b)(5) (West 1999).

**6.** Bigham deposited Ball's check on February 3, 1995, several weeks before he delivered the engine to Ball's farm in Texas.

his purchase of the engine. The claimed defects or breach of contract claims are clearly connected to the sale of the engine and its delivery to, and installation in, Texas. Bigham alleges the contract of sale was made entirely in Texas and that title passed in Kansas. However, as above noted, Bigham had the duty to also deliver the engine by his specific agreement in addition to the requirements of section 2.301 of the Texas Business and Commerce Code. Moreover, title to the engine did not pass to Ball until Bigham actually delivered the engine. Tex. Bus. & Com. Code Ann. § 2.401(b) (Vernon 1994).

Regarding the third prong that the assertion of personal jurisdiction must comport with fair play and substantial justice, it was incumbent upon Bigham "to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Guardian Royal Exch.*, 815 S.W.2d at 231. Moreover, in *Guardian,* the Court observed that:

> Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.

*N.K. Parrish, Inc. v. Schrimscher*, 516 S.W.2d 956, 959 (Tex.Civ.App.—Amarillo 1974, no writ), presented a somewhat similar situation between a Texas plaintiff and a New Mexico defendant, except that the plaintiff was the seller and the defendant was the buyer. There, we held that the special appearance was improperly granted and that constitutional considerations did not prohibit assertion of jurisdiction over the nonresident defendant. As we noted, a consideration of the relative convenience of the parties results in no more than a stand-off; and here, it is as inconvenient for Bigham to travel less than 150 miles to litigate the matter in Texas as it is for Ball to travel the same distance to litigate in Kansas. Also, we note that both Texas and Kansas have adopted Chapter 2 of the Uniform Commercial Code and the law of sales in both states is similar.

No evidence was presented showing that a trial in Texas would be unreasonably inconvenient for witnesses, nor was any other similar burden established in the record. Further, the Kansas "long arm" statute is similar to the Texas provision and Bigham does not contend that any significant diversity among forums for trial in Texas or Kansas exists which could possibly impact on the concept of fairness. Bigham contends that *CSR Ltd. v. Link*, 925 S.W.2d 591 (Tex.1996) is controlling. We disagree. In *CSR Ltd.*, raw materials were sold and delivered to a third party in Australia who shipped them to Texas. Here however, a third party was not involved, the engine was a finished product that was delivered by Bigham to Ball's farm in Texas, where Bigham assisted in its installation.

Bigham also contends that under *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978), the assumption of jurisdiction of Bigham would offend traditional notions of fair play and substantial justice. In *U–Anchor*, Burt did not travel to Texas concerning the transaction, and the contract required that U–Anchor furnish Burt advertising along Oklahoma highways. Here, however, Bigham expressly agreed to deliver the engine and assist in its installation in Texas, and in fact delivered the engine to Texas and assisted in its installation. Further, he made a second trip from Kansas to Texas a few weeks later to repair the engine. Accordingly, we conclude that the record does not present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." Points of error three, four, five, six, seven and eight are sustained as they apply to the issue of "specific" jurisdiction.

Accordingly, the order sustaining the special appearance and dismissing the ac-

tion is reversed and the cause is remanded to the trial court for further proceedings.