NO. 07-03-0163-CV

 

 IN THE COURT OF APPEALS

 

 FOR THE SEVENTH DISTRICT OF TEXAS

 

                   AT AMARILLO

 

       PANEL B

 

     OCTOBER 24, 2003

 

 ______________________________

 

 

       MORGAN DOWDY, APPELLANT

 

                    V.

 

            DOVIE MILLER, APPELLEE

 

 

 _________________________________

 

 FROM THE 106TH DISTRICT
COURT OF LYNN COUNTY;

 

 NO. 00-04-05832; HONORABLE CARTER
T. SCHILDKNECHT, JUDGE

 

 _______________________________

 

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

       OPINION

Morgan Dowdy brings this interlocutory
appeal from the denial of his special appearance challenging the trial court’s
personal jurisdiction over him in his individual capacity in a suit for breach
of a lease by a corporation of which he is an officer and director.  Finding merit in his issue, we reverse the
trial court’s denial of his special appearance.








Most of the facts giving rise to this
litigation are undisputed.  Morgan and
his father Charles W. Dowdy, Mississippi residents, were, with other family
members, officers, directors and shareholders of two Mississippi corporations
formed to operate commercial radio stations in Texas.  West Texas Broadcasting, Inc., owned a station in Tahoka, in Lynn
County; H.D., Inc. owned a station in Lubbock. This litigation concerns West
Texas Broadcasting, Inc.[1]
(which we refer to as WTB). In August 1986 Charles W. Dowdy executed a lease on
behalf of WTB with Lionel and Dovie Miller that allowed WTB to construct a
transmitting tower and related equipment on land owned by the Millers.  The lease was for a term of 25 years and
contained no restrictions on assignment.

In November 1987, after the tower was
constructed, Morgan Dowdy, acting as an officer of WTB, executed an amendment
to the lease altering some of its terms to bring them into conformity with the
tower as constructed, and increasing the monthly rent to $350.  The tower was removed some time before
August 1996, but the site was not restored to its prior condition.  WTB continued to pay rent under the lease.








In 1997, WTB sold the Tahoka station and
H.D., Inc. sold the Lubbock station.  The
sale contract executed by WTB provided for the assignment to the buyer of
certain leases and contracts, not including the lease from the Millers.  The record suggests that WTB continued
paying rent to the Millers through March 1998, then ceased.  In June 1999 and again in February 2000,
attorneys representing the Millers sent letters to WTB and the Dowdys
requesting payment of overdue rent.  

Dovie Miller[2]
filed suit against WTB, Morgan Dowdy individually, and Charles W. Dowdy
individually, in April 2000.  She
alleged a breach of the lease and sought to recover past and future rent
totaling $48,650, $5,000 for restoration of the tract, pre- and post- judgment
interest, and attorneys fees and costs. 
Charles and Morgan filed a special appearance, supported by affidavits,
alleging the court lacked personal jurisdiction over them in their individual
capacities because they had no contacts with Texas other than as corporate
officers.[3]


Charles died in November 2001, before
discovery on the issue of personal jurisdiction was completed.  In July 2002, Morgan filed a brief in
support of his special appearance arguing he had no individual contacts with
Texas and jurisdiction over a corporation does not establish jurisdiction over
its officers, directors, or employees in their individual capacities.  In her response, Miller alleged Morgan did
not deny that WTB had breached the lease and that the Dowdys had improperly
used proceeds of the station’s sale to preferentially repay loans to
themselves.  She also alleged that as
part of the radio station sale transaction Morgan executed a non-compete
agreement in his individual capacity, establishing minimum contacts with Texas.








At a hearing on the special appearance,
the parties introduced the discovery conducted on the issue, including evidence
that WTB was still in existence as a Mississippi corporation, but was not
active and had no assets.  The trial
court denied Morgan’s special appearance. 
On interlocutory appeal pursuant to section 51.014(a)(7) of the Civil
Practice & Remedies Code (Vernon 2002), Morgan presents a single issue
challenging the trial court’s denial of his special appearance.           








A plaintiff bringing suit against a
non-resident bears the initial burden of pleading sufficient allegations to
bring the defendant within the scope of the long-arm statute.[4]  BMC Software Belgium v. Marchand, 83
S.W.3d 789, 793 (Tex. 2002); see Kawasaki Steel Corp. v. Middleton, 699
S.W.2d 199, 202-03 (Tex. 1985). Miller’s petition alleged that Morgan had
conducted business in Texas. The Texas long-arm statute authorizes the exercise
of jurisdiction over non-residents “doing business” in our state.  Tex.Civ.Prac. & Rem. Code Ann. § 17.042
(Vernon 2002).  The “doing business”
standard of our long-arm statute permits it to reach as far as the federal
constitutional requirements of due process will allow.  Guardian Royal Exchange Assur., Ltd. v.
English China Clays, 815 S.W.2d 223, 226 (Tex. 1991).  The reviewing court therefore must determine
whether it is consistent with federal constitutional requirements of due
process for the Texas court to assert in personam jurisdiction over the
non-resident defendant.  Id; see also
Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 413-14, 104
S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The familiar due process analysis in
personal jurisdiction cases considers two factors: (1) whether the non-resident
defendant has purposely established “minimum contacts” with Texas and, if so,
(2) whether the exercise of jurisdiction comports with “fair play and
substantial justice.”  Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528
(1985).  Purposely established minimum
contacts may give rise in a particular case to jurisdiction that is specific or
general. Guardian Royal, 815 S.W.2d at 227-230.  When specific jurisdiction is asserted, the
cause of action must arise out of, or relate to, the non-resident defendant’s
contact with the forum state. General jurisdiction requires continuous and
systematic contacts between the non-resident defendant and the forum
state.  Id. at 230.








Specific jurisdiction may be justified on
the basis of activities the defendant has conducted within Texas, BMC
Software, 83 S.W.3d at 796, or of activities “purposefully directed” to
Texas, Guardian Royal, 815 S.W.2d at 228. The constitutional requirement
is that the defendant have “fair warning” that his conduct can subject him to
suit in the forum state.  Burger King,
471 U.S. at 472.  Due process does not
permit jurisdiction based solely on “random,” “fortuitous” or “attenuated”
contacts, id. at 475, or over those without “meaningful contacts, ties
or relations” with our state. Id., citing International Shoe Co. v.
Washington, 326 U.S. 310, 319, 90 L.Ed. 95, 66 S.Ct. 154 (1945).

A defendant challenging a court’s exercise
of personal jurisdiction through a special appearance carries the burden of
negating all bases of personal jurisdiction. 
Kawasaki, 699 S.W.2d at 203. In reviewing a trial court’s denial
of a special appearance, we review the court’s conclusion whether personal
jurisdiction exists de novo, as the question is one of law. BMC
Software, 83 S.W.3d at 794. We review the court’s factual findings for
legal and factual sufficiency. Id.; see Ball v. Bigham, 990
S.W.2d 343, 347 (Tex.App.--Amarillo 1999, no pet.). When the trial court issues
no findings of fact, it is implied the court found all facts that are necessary
to support its ruling and that are supported by the evidence. BMC Software,
83 S.W.3d at 795.  The record before us includes
the clerk’s and reporter’s records, though, so such implied findings are not
conclusive and Morgan may challenge the sufficiency of the evidence. BMC
Software, 83 S.W.3d at 795; Roberson v. Robinson, 768 S.W.2d 280,
281 (Tex. 1989). As noted, the facts in this case are generally
undisputed.  








Miller does not argue that Morgan’s
contacts with Texas establish general jurisdiction over him. In accordance with
the governing standards, then, to determine whether Morgan has negated all bases
of personal jurisdiction presented, we first consider whether the record
supports a conclusion that Morgan established minimum contacts with Texas so as
to establish specific jurisdiction with respect to Miller’s cause of action. 

Miller contends the evidence supports a
finding that Morgan established minimum contacts to support jurisdiction over
him in two ways:  by his execution of a
personal non-compete agreement, and by his actions as an officer and director of
WTB, which did business in Texas. We conclude that neither of those activities
is sufficient to establish the requisite minimum contacts.

Non-Compete Agreement








In conjunction with WTB’s sale of the
radio station, Morgan individually signed[5]
a non-compete agreement, by which he agreed not to engage in the radio
broadcast business in competition with the Tahoka radio station for a period of
three years after the closing. Miller points to this personal agreement by
Morgan as the type of purposeful contact that justifies the exercise of
jurisdiction over him by Texas courts. And, Miller argues, since the
non-compete agreement was signed in connection with the event that provided the
corporate funds by which Miller should have been paid, Morgan’s purposeful
contact provides specific jurisdiction over him for Miller’s suit. 

Under the facts of this case, we cannot
agree that Morgan’s execution of the non-compete agreement warrants the
exercise of personal jurisdiction over him. 
Miller’s causes of action did not arise out of the non-compete
agreement, nor from the contract for sale of the station; her claims arose from
her lease with WTB. The non-compete agreement’s relation to the lease and to
Miller’s claims under the lease is too attenuated to give rise to specific
jurisdiction. 

It is also instructive here to recall the
U.S. Supreme Court’s discussion in Burger King of the effect of a single
contract in establishing minimum contacts. The Court there wrote: “If the
question is whether an individual's contract with an out-of-state party alone
can automatically establish sufficient minimum contacts in the other party's
home forum, we believe the answer clearly is that it cannot.”  471 U.S. at 478.   This holding must apply with particular force where the contract
is one to refrain from doing an act in Texas.[6]
 Cf. Tex.Civ.Prac. & Rem.
Code Ann. §17.042(1) (Vernon 2002) (defining “doing business” to include
contracts to be performed in this state).








Breach
of Duty 

Miller next
argues that “[Morgan] Dowdy purposefully directed his conduct as a corporate
officer and director toward Texas and personally assumed the benefits and
burdens of running his company under Texas law.” As Miller characterizes the
events, Morgan “brought his company into Texas to do business,” thereby
becoming subject to Texas corporate laws, including those condemning corporate
denuding and breach of fiduciary duty. Those actions, Miller argues,
constituted the type of purposeful acts that justify exercise of personal jurisdiction
over Morgan for his alleged violation of those corporate laws.

Miller places reliance on various
provisions of the Texas Business Corporation Act. She initially points to
article 8.02 of the Act which provides that foreign corporations doing business
in Texas under a certificate of authority, and its officers and directors,
“shall be subject to the same duties, restrictions, penalties, and liabilities”[7]
as domestic corporations.








            Miller’s argument is flawed. As
article 8.02 makes clear, every foreign corporation that qualifies to do
business in Texas undertakes certain obligations under Texas law. Miller does
not go so far as to assert that the officers or directors of a corporation
authorized to do business in Texas are automatically subject to personal
jurisdiction in our state in causes of action arising from corporate
activities. At oral argument, counsel for Miller argued that such jurisdiction
properly is limited to control persons such as Morgan. Even so limited, though,
such a rule amounts to the kind of mechanical test the courts have rejected. See,
e.g., Guardian Royal, 815 S.W.2d at 231; Laykin v. McFall, 830 S.W. 2d 266,
271 (Tex.App.–Amarillo 1992) (orig. proceeding).

Miller next cites article 6.04 and Henry
I. Siegel Co. v. Holliday, 663 S.W.2d 824 (Tex. 1984),[8]
arguing that “once the [station sale proceeds] hit the closing table, Texas law
impressed a trust on it that required Dowdy to make arrangements to pay Miller
before he paid himself.”  We see nothing
to indicate that, so far as WTB was concerned, the sale proceeds  “hit the closing table” in Texas, nor that
any of Morgan’s activities involving the proceeds occurred in our state.
Miller’s claims of breach of duty by Morgan through his handling of the sale
proceeds cannot be said to arise from acts committed in Texas.  See BMC Software, 83 S.W.3d at
796-97.  Moreover, Miller cites us to no
authority holding that the presence of a trust beneficiary in Texas, standing
alone, confers personal jurisdiction here on the purported trustee. 








Miller’s argument also disregards the
distinction between Morgan’s individual liability and WBT’s corporate
liability, and the nature of a corporate entity.  The evidence supports the statement that he directed his conduct
“as a corporate officer” to Texas, but the contention that his acts as a
corporate officer necessarily resulted in his personal assumption of the
benefits and burdens of running a company in Texas is contrary to established
law. Morgan has cited a line of Texas authority for the proposition that
personal jurisdiction over a corporation does not extend to individual
corporate officers, directors, or employees, unless the corporation is the
alter ego of the defendant.  Vosko v.
Chase Manhattan Bank, 909 S.W.2d 95, 99 (Tex.App.–Houston [14th
Dist.] 1995, writ denied); Leon Ltd. v. Albuquerque Commons Partnership,
862 S.W.2d 693, 707-08 (Tex.App.–El Paso 1993, no writ); see also Siskind
v. Villa Foundation for Education, 642 S.W.2d 434 (Tex. 1982);  Solow v. Century Assets Corp.,12
S.W.3d 512 (Tex.App.– Beaumont 1999, no pet.). 
Here Miller has not pled or presented evidence supporting an alter ego
theory.  See generally Castleberry v.
Branscum, 721 S.W.2d 270 (Tex. 1986).

The U.S. Supreme Court also has made clear
that the contacts sufficient to maintain jurisdiction over an individual are
those of the individual. Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct.
1485, 79 L.Ed.2d 804 (1984) (“Each defendant’s contacts with the forum State
must be assessed individually.”); see Burger King, 471 U.S. at 475.








At oral argument, Miller brought to our
attention the recent opinion in SITQ E.U., Inc., v. Reata Restaurants, Inc.,
111 S.W.3d 638 (Tex.App.–Fort Worth 2003, pet. filed).  In SITQ, commercial tenants brought
suit against the partnership that was their lessor, foreign holding companies
composing the partnership, and directors of those companies.  The tenants’ claims included fraud,
negligent misrepresentation, conspiracy, tortious interference, denuding, and
fraudulent transfer.  A foreign
corporate defendant and its sole shareholder and director filed special
appearances, the individual defendant asserting that his contacts with Texas
were solely in his corporate capacity.  Id.
at 644.  The court of appeals affirmed
the trial court’s denial of the special appearances.  While we cannot disagree with the court’s holding that an
individual defendant is not shielded from personal jurisdiction to answer for
his own tortious conduct simply because his actions were undertaken on behalf
of an organization, we do not find SITQ controlling here. It involves
factors not present in this case. Significantly, in SITQ, the actions of
a Texas agent were imputed to the appellants. Too, that case involves
allegations of misrepresentations, a factor not present here. It therefore
shares a foundation with cases such as Memorial Hosp. Sys. v. Fisher Ins.
Agency, Inc. 835 S.W.2d 645 (Tex.App.–Houston [14th Dist.] 1992,
no writ), cited here by Miller, and Shapolsky v. Brewton, 56 S.W.3d 120
(Tex.App.–Houston [14th Dist.] 2001, no pet.), which also involved
misrepresentations made by out-of-state defendants to Texas plaintiffs who
relied on them in Texas.[9]  Miller has attempted to bring this case
within that category by pointing out that WTB continued to pay the rent under
the lease for some time after the closing of the sale of the radio station,
perhaps therefore misleading Miller to believe that it would continue to pay
the lease. There is no evidence, though, that WTB’s rent payments after the
closing were accompanied by any representation and the payments themselves
cannot be seen as such.  








The evidence shows that Morgan, acting in
Mississippi, caused WTB to deplete its funds by paying some of its creditors,
including himself, while failing to pay Miller. There is factually sufficient
evidence from which the trial court could have concluded that Miller was the
only creditor not paid. Miller does not contend that Morgan thereby committed a
tortious act in Texas, but cites the proposition that a tortfeasor who knows
that the brunt of the injury will be felt by a particular resident in the forum
state must reasonably anticipate being haled into court there to answer for his
actions. See Cartlidge v. Hernandez, 9 S.W.3d 341, 348 (Tex.App.–Houston
[14th Dist.] 1999, no pet.), citing Memorial Hospital. This
court previously has declined to adopt a test basing personal jurisdiction on
the mere occurrence of injury in Texas. See Laykin v. McFall, 830 S.W.
2d at 271. We cannot say that Morgan’s failure to cause WTB to honor its lease
with Miller, without more, is an activity sufficiently directed to Texas to
subject him personally to jurisdiction here. See Burger King, 471 U.S.
at 474 (foreseeability of causing injury in another state not sufficient alone
to cause defendant to anticipate being subjected to suit in that state).

Finding that the record does not support a
conclusion that Morgan’s activities established the minimum contacts with Texas
such as to subject him to personal jurisdiction, we need not address whether
the exercise of personal jurisdiction over him would comport with “fair play
and substantial justice.”  We sustain
Morgan Dowdy’s issue, reverse the order of the trial court denying his special
appearance, and remand the case with instructions to dismiss Morgan Dowdy. 

James
T. Campbell

        Justice











[1]The
corporation’s actual name was West Texas Broadcasting Company, Inc. All its
shares were owned by members of Charles W. Dowdy’s immediate family. The
corporation submitted an application to the Texas Secretary of State for a
certificate of authority to transact business in Texas. It appears that it did
not do so, though, until the day before the closing of the sale of its station
in Tahoka. 





[2]Her husband,
Lionel Miller, died before commencement of this litigation.





[3]Morgan testified
on deposition that he had traveled to Texas to inspect the tower after its
construction, and acknowledged one or two other trips to Texas on corporation
business, but denied any other contact with our state.





[4]Morgan questions
the sufficiency of Miller’s allegations concerning Morgan’s personal
amenability to suit in Texas to meet this “initial burden,” citing Frank A.
Smith Sales, Inc. v. Atlantic Aero, Inc., 31 S.W.3d 742 (Tex.App.–Corpus
Christi 2000, no pet.). Miller’s original petition, which, according to the
record before us, remains her live pleading, alleges only a suit to enforce the
lease. Morgan testified on deposition that the lease was a valid obligation of
WTB, and that WTB’s lack of funds was the only reason it  had not made further payments under the lease.
He further testified that the funds WTB received from sale of the radio station
were used to pay creditors, which included Morgan himself and other entities
controlled by Morgan and other family members. Miller’s allegations that such
payments were improper and breached a duty Morgan owed Miller, and her
allegation of his execution of a non-compete agreement, were contained
initially in her response to Morgan’s special appearance and later in briefs in
the trial court and this court. For purposes of this opinion, we assume,
without deciding, that the allegations in Miller’s original petition that
Morgan “conducted business” in Texas, either alone or coupled with Miller’s
later assertions of Morgan’s execution of the non-compete agreement and
wrongdoing in handling the proceeds of WTB’s sale of the radio station, meet
her “initial burden.” 





[5]None of Miller’s
record references identify an executed copy of the agreement. Morgan testified
on deposition that he did not remember signing such an agreement. The record
contains an unsigned copy of a document entitled “Non-Compete Agreement”
between the station purchaser and Morgan. The record also contains an opinion
of counsel issued in connection with the closing of the sale that states a
non-compete agreement was signed. This opinion assumes that Morgan signed a
non-compete agreement like that in the record. There is no contention, though,
that Morgan signed the agreement in Texas. Morgan testified on deposition that
the sale of the station was closed “by mail,” and none of the documents signed
by Morgan in connection with the sale appear to have been signed in Texas. 

 





[6]Miller argues
that Morgan consented in the non-compete agreement to its enforcement in Texas.
Without expressing any opinion on the question whether personal jurisdiction
would lie in Texas for a suit against Morgan to enforce the non-compete
agreement, we note that we do not find an agreed forum-selection provision in
the agreement; it does contain a choice-of-law provision adopting the internal
law of Texas.  





[7] Tex. Bus. Corp. Act Ann. art. 8.02 (Vernon 2003).





[8]Article 6.04 of
the Business Corporation Act establishes procedures a corporation must follow
“before filing articles of dissolution.” The Siegel opinion applied the
provisions of article 6.04 to the dissolution of a corporation. 663 S.W.2d at
826. Article 6.04 thus applies to WTB only by analogy. The undisputed evidence
is that WTB was not dissolved, only that it has no assets and its certificate
of authority to do business in Texas lapsed. 
Neither of these conditions invokes the provisions of article 6.04. Even
assuming, arguendo,  that
Morgan’s conduct amounted to a breach of duty imposed by Texas law, that fact
alone cannot establish the minimum contacts necessary to sustain personal
jurisdiction.





[9]Note the
discussion in Memorial Hospital that the tort there alleged, that
of negligent misrepresentation, is held to be committed in part where reliance
on the misrepresentation occurs. 835 S.W.2d at 648.