NO. 07-03-0163-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 24, 2003

_____


MORGAN DOWDY, APPELLANT

V.

DOVIE MILLER, APPELLEE


_____

FROM THE 106TH DISTRICT COURT OF LYNN COUNTY;

NO. 00-04-05832; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.


**OPINION**


Morgan Dowdy brings this interlocutory appeal from the denial of his special appearance challenging the trial court's personal jurisdiction over him in his individual capacity in a suit for breach of a lease by a corporation of which he is an officer and director. Finding merit in his issue, we reverse the trial court's denial of his special appearance.

Most of the facts giving rise to this litigation are undisputed. Morgan and his father Charles W. Dowdy, Mississippi residents, were, with other family members, officers, directors and shareholders of two Mississippi corporations formed to operate commercial radio stations in Texas. West Texas Broadcasting, Inc., owned a station in Tahoka, in Lynn County; H.D., Inc. owned a station in Lubbock. This litigation concerns West Texas Broadcasting, Inc.[1] (which we refer to as WTB). In August 1986 Charles W. Dowdy executed a lease on behalf of WTB with Lionel and Dovie Miller that allowed WTB to construct a transmitting tower and related equipment on land owned by the Millers. The lease was for a term of 25 years and contained no restrictions on assignment.

In November 1987, after the tower was constructed, Morgan Dowdy, acting as an officer of WTB, executed an amendment to the lease altering some of its terms to bring them into conformity with the tower as constructed, and increasing the monthly rent to $350. The tower was removed some time before August 1996, but the site was not restored to its prior condition. WTB continued to pay rent under the lease.

In 1997, WTB sold the Tahoka station and H.D., Inc. sold the Lubbock station. The sale contract executed by WTB provided for the assignment to the buyer of certain leases and contracts, not including the lease from the Millers. The record suggests that WTB continued paying rent to the Millers through March 1998, then ceased. In June 1999 and

[1]The corporation's actual name was West Texas Broadcasting Company, Inc. All its shares were owned by members of Charles W. Dowdy's immediate family. The corporation submitted an application to the Texas Secretary of State for a certificate of authority to transact business in Texas. It appears that it did not do so, though, until the day before the closing of the sale of its station in Tahoka.

again in February 2000, attorneys representing the Millers sent letters to WTB and the Dowdys requesting payment of overdue rent.

Dovie Miller[2] filed suit against WTB, Morgan Dowdy individually, and Charles W. Dowdy individually, in April 2000. She alleged a breach of the lease and sought to recover past and future rent totaling $48,650, $5,000 for restoration of the tract, pre- and post-judgment interest, and attorneys fees and costs. Charles and Morgan filed a special appearance, supported by affidavits, alleging the court lacked personal jurisdiction over them in their individual capacities because they had no contacts with Texas other than as corporate officers.[3]

Charles died in November 2001, before discovery on the issue of personal jurisdiction was completed. In July 2002, Morgan filed a brief in support of his special appearance arguing he had no individual contacts with Texas and jurisdiction over a corporation does not establish jurisdiction over its officers, directors, or employees in their individual capacities. In her response, Miller alleged Morgan did not deny that WTB had breached the lease and that the Dowdys had improperly used proceeds of the station's sale to preferentially repay loans to themselves. She also alleged that as part of the radio station sale transaction Morgan executed a non-compete agreement in his individual capacity, establishing minimum contacts with Texas.

---

[2]Her husband, Lionel Miller, died before commencement of this litigation.

[3]Morgan testified on deposition that he had traveled to Texas to inspect the tower after its construction, and acknowledged one or two other trips to Texas on corporation business, but denied any other contact with our state.

At a hearing on the special appearance, the parties introduced the discovery conducted on the issue, including evidence that WTB was still in existence as a Mississippi corporation, but was not active and had no assets. The trial court denied Morgan's special appearance. On interlocutory appeal pursuant to section 51.014(a)(7) of the Civil Practice & Remedies Code (Vernon 2002), Morgan presents a single issue challenging the trial court's denial of his special appearance.

A plaintiff bringing suit against a non-resident bears the initial burden of pleading sufficient allegations to bring the defendant within the scope of the long-arm statute.[4] *BMC Software Belgium v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002); *see Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202-03 (Tex. 1985). Miller's petition alleged that Morgan had conducted business in Texas. The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in our state. Tex.Civ.Prac. & Rem. Code Ann. § 17.042 (Vernon 2002). The "doing business" standard of our long-arm

---

[4]Morgan questions the sufficiency of Miller's allegations concerning Morgan's personal amenability to suit in Texas to meet this "initial burden," citing *Frank A. Smith Sales, Inc. v. Atlantic Aero, Inc.*, 31 S.W.3d 742 (Tex.App.–Corpus Christi 2000, no pet.). Miller's original petition, which, according to the record before us, remains her live pleading, alleges only a suit to enforce the lease. Morgan testified on deposition that the lease was a valid obligation of WTB, and that WTB's lack of funds was the only reason it had not made further payments under the lease. He further testified that the funds WTB received from sale of the radio station were used to pay creditors, which included Morgan himself and other entities controlled by Morgan and other family members. Miller's allegations that such payments were improper and breached a duty Morgan owed Miller, and her allegation of his execution of a non-compete agreement, were contained initially in her response to Morgan's special appearance and later in briefs in the trial court and this court. For purposes of this opinion, we assume, without deciding, that the allegations in Miller's original petition that Morgan "conducted business" in Texas, either alone or coupled with Miller's later assertions of Morgan's execution of the non-compete agreement and wrongdoing in handling the proceeds of WTB's sale of the radio station, meet her "initial burden."

4

statute permits it to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exchange Assur., Ltd. v. English China Clays*, 815 S.W.2d 223, 226 (Tex. 1991). The reviewing court therefore must determine whether it is consistent with federal constitutional requirements of due process for the Texas court to assert in personam jurisdiction over the non-resident defendant. *Id; see also Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The familiar due process analysis in personal jurisdiction cases considers two factors: (1) whether the non-resident defendant has purposely established "minimum contacts" with Texas and, if so, (2) whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Purposely established minimum contacts may give rise in a particular case to jurisdiction that is specific or general. *Guardian Royal*, 815 S.W.2d at 227-230. When specific jurisdiction is asserted, the cause of action must arise out of, or relate to, the non-resident defendant's contact with the forum state. General jurisdiction requires continuous and systematic contacts between the non-resident defendant and the forum state. *Id.* at 230.

Specific jurisdiction may be justified on the basis of activities the defendant has conducted within Texas, *BMC Software*, 83 S.W.3d at 796, or of activities "purposefully directed" to Texas, *Guardian Royal*, 815 S.W.2d at 228. The constitutional requirement is that the defendant have "fair warning" that his conduct can subject him to suit in the forum

state. *Burger King*, 471 U.S. at 472. Due process does not permit jurisdiction based solely on "random," "fortuitous" or "attenuated" contacts, *id.* at 475, or over those without "meaningful contacts, ties or relations" with our state. *Id.*, citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 90 L.Ed. 95, 66 S.Ct. 154 (1945).

A defendant challenging a court's exercise of personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Kawasaki*, 699 S.W.2d at 203. In reviewing a trial court's denial of a special appearance, we review the court's conclusion whether personal jurisdiction exists *de novo*, as the question is one of law. *BMC Software*, 83 S.W.3d at 794. We review the court's factual findings for legal and factual sufficiency. *Id.*; *see Ball v. Bigham*, 990 S.W.2d 343, 347 (Tex.App.--Amarillo 1999, no pet.). When the trial court issues no findings of fact, it is implied the court found all facts that are necessary to support its ruling and that are supported by the evidence. *BMC Software*, 83 S.W.3d at 795. The record before us includes the clerk's and reporter's records, though, so such implied findings are not conclusive and Morgan may challenge the sufficiency of the evidence. *BMC Software*, 83 S.W.3d at 795; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). As noted, the facts in this case are generally undisputed.

Miller does not argue that Morgan's contacts with Texas establish general jurisdiction over him. In accordance with the governing standards, then, to determine whether Morgan has negated all bases of personal jurisdiction presented, we first consider

whether the record supports a conclusion that Morgan established minimum contacts with Texas so as to establish specific jurisdiction with respect to Miller's cause of action.

Miller contends the evidence supports a finding that Morgan established minimum contacts to support jurisdiction over him in two ways:  by his execution of a personal non-compete agreement, and by his actions as an officer and director of WTB, which did business in Texas. We conclude that neither of those activities is sufficient to establish the requisite minimum contacts.

**Non-Compete Agreement**

In conjunction with WTB's sale of the radio station, Morgan individually signed[5] a non-compete agreement, by which he agreed not to engage in the radio broadcast business in competition with the Tahoka radio station for a period of three years after the closing. Miller points to this personal agreement by Morgan as the type of purposeful contact that justifies the exercise of jurisdiction over him by Texas courts. And, Miller argues, since the non-compete agreement was signed in connection with the event that

---

[5]None of Miller's record references identify an executed copy of the agreement. Morgan testified on deposition that he did not remember signing such an agreement. The record contains an unsigned copy of a document entitled "Non-Compete Agreement" between the station purchaser and Morgan. The record also contains an opinion of counsel issued in connection with the closing of the sale that states a non-compete agreement was signed. This opinion assumes that Morgan signed a non-compete agreement like that in the record. There is no contention, though, that Morgan signed the agreement in Texas. Morgan testified on deposition that the sale of the station was closed "by mail," and none of the documents signed by Morgan in connection with the sale appear to have been signed in Texas.

provided the corporate funds by which Miller should have been paid, Morgan's purposeful contact provides specific jurisdiction over him for Miller's suit.

Under the facts of this case, we cannot agree that Morgan's execution of the non-compete agreement warrants the exercise of personal jurisdiction over him. Miller's causes of action did not arise out of the non-compete agreement, nor from the contract for sale of the station; her claims arose from her lease with WTB. The non-compete agreement's relation to the lease and to Miller's claims under the lease is too attenuated to give rise to specific jurisdiction.

It is also instructive here to recall the U.S. Supreme Court's discussion in *Burger King* of the effect of a single contract in establishing minimum contacts. The Court there wrote: "If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." 471 U.S. at 478. This holding must apply with particular force where the contract is one to *refrain* from doing an act in Texas.[6] *Cf.* Tex.Civ.Prac. & Rem. Code Ann. §17.042(1) (Vernon 2002) (defining "doing business" to include contracts to be performed in this state).

---

[6]Miller argues that Morgan consented in the non-compete agreement to its enforcement in Texas. Without expressing any opinion on the question whether personal jurisdiction would lie in Texas for a suit against Morgan to enforce the non-compete agreement, we note that we do not find an agreed forum-selection provision in the agreement; it does contain a choice-of-law provision adopting the internal law of Texas.

8

**Breach of Duty**

Miller next argues that "[Morgan] Dowdy purposefully directed his conduct as a corporate officer and director toward Texas and personally assumed the benefits and burdens of running his company under Texas law." As Miller characterizes the events, Morgan "brought his company into Texas to do business," thereby becoming subject to Texas corporate laws, including those condemning corporate denuding and breach of fiduciary duty. Those actions, Miller argues, constituted the type of purposeful acts that justify exercise of personal jurisdiction over Morgan for his alleged violation of those corporate laws.

Miller places reliance on various provisions of the Texas Business Corporation Act. She initially points to article 8.02 of the Act which provides that foreign corporations doing business in Texas under a certificate of authority, and its officers and directors, "shall be subject to the same duties, restrictions, penalties, and liabilities"[7] as domestic corporations.

Miller's argument is flawed. As article 8.02 makes clear, every foreign corporation that qualifies to do business in Texas undertakes certain obligations under Texas law. Miller does not go so far as to assert that the officers or directors of a corporation authorized to do business in Texas are automatically subject to personal jurisdiction in our state in causes of action arising from corporate activities. At oral argument, counsel for Miller argued that such jurisdiction properly is limited to control persons such as Morgan. Even so limited, though, such a rule amounts to the kind of mechanical test the courts have

---

[7] Tex. Bus. Corp. Act Ann. art. 8.02 (Vernon 2003).

9

rejected. *See, e.g., Guardian Royal*, 815 S.W.2d at 231; *Laykin v. McFall*, 830 S.W. 2d 266, 271 (Tex.App.–Amarillo 1992) (orig. proceeding).

Miller next cites article 6.04 and *Henry I. Siegel Co. v. Holliday*, 663 S.W.2d 824 (Tex. 1984),[8] arguing that "once the [station sale proceeds] hit the closing table, Texas law impressed a trust on it that required Dowdy to make arrangements to pay Miller before he paid himself." We see nothing to indicate that, so far as WTB was concerned, the sale proceeds "hit the closing table" in Texas, nor that any of Morgan's activities involving the proceeds occurred in our state. Miller's claims of breach of duty by Morgan through his handling of the sale proceeds cannot be said to arise from acts committed in Texas. *See BMC Software*, 83 S.W.3d at 796-97. Moreover, Miller cites us to no authority holding that the presence of a trust beneficiary in Texas, standing alone, confers personal jurisdiction here on the purported trustee.

Miller's argument also disregards the distinction between Morgan's individual liability and WBT's corporate liability, and the nature of a corporate entity. The evidence supports the statement that he directed his conduct "as a corporate officer" to Texas, but the contention that his acts as a corporate officer necessarily resulted in his personal

---

[8]Article 6.04 of the Business Corporation Act establishes procedures a corporation must follow "before filing articles of dissolution." The *Siegel* opinion applied the provisions of article 6.04 to the dissolution of a corporation. 663 S.W.2d at 826. Article 6.04 thus applies to WTB only by analogy. The undisputed evidence is that WTB was not dissolved, only that it has no assets and its certificate of authority to do business in Texas lapsed. Neither of these conditions invokes the provisions of article 6.04. Even assuming, *arguendo*, that Morgan's conduct amounted to a breach of duty imposed by Texas law, that fact alone cannot establish the minimum contacts necessary to sustain personal jurisdiction.

assumption of the benefits and burdens of running a company in Texas is contrary to established law. Morgan has cited a line of Texas authority for the proposition that personal jurisdiction over a corporation does not extend to individual corporate officers, directors, or employees, unless the corporation is the alter ego of the defendant. *Vosko v. Chase Manhattan Bank*, 909 S.W.2d 95, 99 (Tex.App.–Houston [14th Dist.] 1995, writ denied); *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 707-08 (Tex.App.–El Paso 1993, no writ); *see also Siskind v. Villa Foundation for Education*, 642 S.W.2d 434 (Tex. 1982); *Solow v. Century Assets Corp.*, 12 S.W.3d 512 (Tex.App.– Beaumont 1999, no pet.). Here Miller has not pled or presented evidence supporting an alter ego theory. *See generally Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986).

The U.S. Supreme Court also has made clear that the contacts sufficient to maintain jurisdiction over an individual are those of the individual. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1485, 79 L.Ed.2d 804 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *see Burger King*, 471 U.S. at 475.

At oral argument, Miller brought to our attention the recent opinion in *SITQ E.U., Inc., v. Reata Restaurants, Inc.*, 111 S.W.3d 638 (Tex.App.–Fort Worth 2003, pet. filed). In *SITQ*, commercial tenants brought suit against the partnership that was their lessor, foreign holding companies composing the partnership, and directors of those companies. The tenants' claims included fraud, negligent misrepresentation, conspiracy, tortious interference, denuding, and fraudulent transfer. A foreign corporate defendant and its sole shareholder and director filed special appearances, the individual defendant asserting that

11

his contacts with Texas were solely in his corporate capacity. *Id.* at 644. The court of appeals affirmed the trial court's denial of the special appearances. While we cannot disagree with the court's holding that an individual defendant is not shielded from personal jurisdiction to answer for his own tortious conduct simply because his actions were undertaken on behalf of an organization, we do not find *SITQ* controlling here. It involves factors not present in this case. Significantly, in *SITQ*, the actions of a Texas agent were imputed to the appellants. Too, that case involves allegations of misrepresentations, a factor not present here. It therefore shares a foundation with cases such as *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.* 835 S.W.2d 645 (Tex.App.–Houston [14ᵗʰ Dist.] 1992, no writ), cited here by Miller, and *Shapolsky v. Brewton,* 56 S.W.3d 120 (Tex.App.–Houston [14ᵗʰ Dist.] 2001, no pet.), which also involved misrepresentations made by out-of-state defendants to Texas plaintiffs who relied on them in Texas.[9] Miller has attempted to bring this case within that category by pointing out that WTB continued to pay the rent under the lease for some time after the closing of the sale of the radio station, perhaps therefore misleading Miller to believe that it would continue to pay the lease. There is no evidence, though, that WTB's rent payments after the closing were accompanied by any representation and the payments themselves cannot be seen as such.

The evidence shows that Morgan, acting in Mississippi, caused WTB to deplete its funds by paying some of its creditors, including himself, while failing to pay Miller. There

---

[9]Note the discussion in *Memorial Hospital* that the tort there alleged, that of negligent misrepresentation, is held to be committed in part where reliance on the misrepresentation occurs. 835 S.W.2d at 648.

is factually sufficient evidence from which the trial court could have concluded that Miller was the only creditor not paid. Miller does not contend that Morgan thereby committed a tortious act in Texas, but cites the proposition that a tortfeasor who knows that the brunt of the injury will be felt by a particular resident in the forum state must reasonably anticipate being haled into court there to answer for his actions. *See Cartlidge v. Hernandez*, 9 S.W.3d 341, 348 (Tex.App.–Houston [14th Dist.] 1999, no pet.), citing *Memorial Hospital*. This court previously has declined to adopt a test basing personal jurisdiction on the mere occurrence of injury in Texas. *See Laykin v. McFall*, 830 S.W. 2d at 271. We cannot say that Morgan's failure to cause WTB to honor its lease with Miller, without more, is an activity sufficiently directed to Texas to subject him personally to jurisdiction here. *See Burger King*, 471 U.S. at 474 (foreseeability of causing injury in another state not sufficient alone to cause defendant to anticipate being subjected to suit in that state).

Finding that the record does not support a conclusion that Morgan's activities established the minimum contacts with Texas such as to subject him to personal jurisdiction, we need not address whether the exercise of personal jurisdiction over him would comport with "fair play and substantial justice." We sustain Morgan Dowdy's issue, reverse the order of the trial court denying his special appearance, and remand the case with instructions to dismiss Morgan Dowdy.

James T. Campbell
Justice

13